BERNARD MORFELD, APPELLEE, V. A. M. WEIDNER, APPELLANT.

FILED NOVEMBER 13, 1915. No. 18309.

1. **Appeal:** RULINGS: HARMLESS ERROR. "To warrant the reversal of a judgment it must affirmatively appear from the record that the ruling with respect to which error is alleged was prejudicial to the rights of the party complaining." *Cronin v. Cronin,* 94 Neb. 353.

2. **Trial:** INSTRUCTIONS: DECLARATIONS. Instruction No. 3, requested by defendant and refused by the court, set out in the opinion, and *held* properly refused.

3. **Appeal:** VERDICT: SETTING ASIDE: PREJUDICE. To warrant the setting aside of a verdict on appeal, on the ground of passion and prejudice on the part of the jury, the record must affirmatively show that the verdict probably resulted therefrom.

4. **Assault and Battery:** PERMANENT INJURY: SUBMISSION TO JURY: EVIDENCE. In order to warrant the submission of the question of permanent impairment of the sexual powers to the jury, it is not necessary that there should be direct evidence that there will be such permanent impairment. Even though no witness testifies in express terms to such permanent impairment, yet, if physicians who treated plaintiff at the time and immediately after he received his injury and who examined him at the time of the trial, testify that the sexual organs are still abnormal, that there still exists malformation or hardening of the parts, and all the other evidence and circumstances in evidence are such as to warrant reasonable minds to conclude that the injury will result in permanent impairment of the sexual powers, the submission of such question to the jury is not in conflict with the rule that requires evidence which shows that there is a reasonable certainty that such permanent impairment will result.

5. **Damages:** PERSONAL INJURY: PLEADING AND PROOF. In an action to recover for injuries caused by an assault, evidence of the loss of sexual powers, resulting directly and proximately from the nature of the injury, may be received and considered by the jury, although the petition does not specify such loss as one of the results of such assault.

APPEAL from the district court for Platte county: GEORGE H. THOMAS, JUDGE. *Affirmed.*

*William V. Allen* and *William, L. Downing,* for appellant.

*A. M. Post* and *C. N. McElfresh, contra.*

FAWCETT, J.

From a judgment of the district court for Platte county, awarding plaintiff damages in the sum of $3,000, for assault, defendant appeals.

The evidence shows that plaintiff had been working for defendant as a farm hand. Early in the morning of the day of the assault, plaintiff notified defendant that he was going to "quit." After breakfast plaintiff attended church, and later in the forenoon he and two companions drove in a buggy to defendant's farm. The purpose of the visit was to obtain settlement of plaintiff's account for wages. On arrival they found defendant in the field cultivating corn. A disagreement arose over the sum of $2. Plaintiff insisted that he must have the $2, and defendant told him he would not get it. Thereupon plaintiff called defendant a vile name. After being told not to do so, plaintiff repeated the offense, whereupon defendant rushed at him and administered a severe kick in his private parts. While it is not certain that defendant intended to kick him in that part of his person, it is fairly deducible from the evidence that at least the heel of his shoe, as he kicked upward, reached such part. Plaintiff then seized a whip and defendant a wrench. Each assumed a threatening attitude, but actual hostilities proceeded no further. After each had dropped his weapon, defendant drew a check for the amount due, less the $2 in dispute, and gave

it to plaintiff. Plaintiff then got into the buggy with his two companions and they drove away. The above is the substance of the testimony of the plaintiff and defendant and the two other young men present, as the jury must have found the facts to be. At the time he received the kick, plaintiff made no outcry and did not say that he had been kicked in the parts above indicated. On the trial, the young man who was driving the buggy was permitted to testify in behalf of plaintiff that on leaving the farm, and right after the altercation took place, plaintiff said that defendant had "kicked him here," indicating the parts above mentioned.

By defendant's second assignment of error it is urged that this was an attempt to introduce a self-serving declaration which was no part of the *res gestæ*. We do not deem it necessary to decide whether or not the statement was so intimately connected with the assault as to make it a part of the *res gestæ*, for the reason that, even if it were too remote, it could not have prejudiced the defendant. Defendant's own testimony is that he kicked at him. The young man standing nearby testified that he saw him administer the kick, but wavered somewhat as to where the blow landed, stating at one time that the foot struck plaintiff in the breast too high up for even the heel to reach the parts indicated, and in another place admitting that the blow might have been low enough for the heel to have done so. Plaintiff testified that the kick was upon the part of his person indicated. This testimony, supported as it is by the uncontradicted evidence as to plaintiff's condition for weeks and months thereafter, is of such a character that, if the testimony of the driver of the buggy had not been admitted, the jury could not have found otherwise than that the plaintiff's injury resulted from the kick administered by defendant.

About seven or eight days after plaintiff's injury, his mother arrived at Humphrey, where plaintiff was being treated by Doctor Lemar. She was interrogated at some length as to the condition in which she found plaintiff,

and was permitted to state what he said as to his pain and suffering and about the parts which were causing the same. No objection was interposed to that line of questioning, but she also testified to some statements made by her to a man who was taking care of Doctor Lemar's office, to the effect that she intended to take plaintiff away. We have examined this part of Mrs. Morfeld's testimony very carefully, and find nothing in the statements made by her to Doctor Lemar, or by the doctor to her, which could have affected the result.

Defendant's third assignment of error is that the court erred in refusing to give his requested instruction No. 3, as follows: "You are instructed that while the court has admitted certain statements and declarations made by the plaintiff to other persons some time after the injury is claimed by the plaintiff to have been received, as to the manner in which his alleged injury was received, you should consider such statements and declarations with caution, and should subject them to a close scrutiny before giving them weight in your deliberations." This instruction could not properly be applied to the testimony of Mrs. Morfeld, or to the statements and declarations made by plaintiff to her. The statements made to her were not as to who had administered the blow, but simply statements as to his then physical condition—statements made at a time when he was either in bed, or confined to the house, or incapacitated for doing any work—and, while the jury might have been told that they would have a right to take into consideration the circumstances under which such statements and allegations were made, we do not think the court would have been justified in telling them that they should consider such statements and declarations "with caution" and should "subject them to a close scrutiny" before "giving them weight" in their deliberations. If the evidence was proper, and we think it was, the court would not have been warranted in so discrediting it. As applied to the testimony of the witness Rupert, the young man who was driving the buggy, it

could not have prejudiced the jury, for the same reasons above given in considering assignment No. 2.

The fourth assignment is that the court erred in permitting Mrs. Morfeld to testify as to statements made by plaintiff at various times, about a year after the alleged injury, at which times he complained about his left side, and stated that standing on his feet while he was clerking had hurt him; that, if he wanted to stoop, it was all right, but as soon as he straightened up it hurt him. None of these statements related to the cause of the injury or to who made the assault. They related simply to plaintiff's then condition. Plaintiff had himself testified to this condition, and the testimony of his mother that he had, at the time designated, made statements to her in reference thereto was improper; but, when taken together with all of the other evidence in the case, we cannot say that it was probably prejudicial. We think it would be extending the rule too far to hold that its admission was error for which the judgment should be reversed.

By the fifth assignment it is urged that the verdict was the result of passion and prejudice on the part of the jury. After a careful reading of all the evidence in the case, we do not think this charge is well founded.

We will now consider the first assignment of error, which is really the important question in the case. This assignment assails instruction No. 7, given by the court on its own motion, and the refusal of the court to give instructon No. 1, requested by defendant. Instruction No. 7 is as follows: "If you find the injury to be permanent, then, in fixing the amount of damages, you should take into consideration the nature and extent of the injury in all its fair and reasonable consequences, including the impairment of his faculties of generation, if any you shall find, and include future as well as past and present disability, physical pain and suffering." The part of the instruction assailed is the clause, "including the impairment of his faculties of generation, if any you shall find." It is argued in the brief that "there was not a syllable of

testimony anywhere in the case to the effect that any of the plaintiff's sexual powers were diminished, as a result of the alleged assault." It is evidently upon that theory that counsel requested the giving of instruction No. 1, the refusal of which is complained of, and which is as follows: "You are instructed that there is no direct evidence in this case that the plaintiff has sustained any injury impairing his sexual powers or his powers of procreation, and, if you find for the plaintiff, you should not take into consideration any such injury in assessing the amount of the plaintiff's recovery." This instruction does not correctly state the rule. In order to warrant the submission of the question of impairment of his sexual powers to the jury, it was not necessary that there should be "direct evidence" that the plaintiff has sustained such an injury. Even though no witness has testified in express terms that a party seeking damages for an assault has sustained a permanent impairment of his sexual powers, yet if physicians, who treated plaintiff at the time and immediately after he received his injury, and who examined him at the time of the trial, testify that the sexual organs are still abnormal, that there still exists some malformation or hardening of the parts, and all of the other evidence, facts and circumstances in evidence are such as to warrant reasonable minds to conclude that the injury will result in impairment of those powers, the jury would be warranted in finding that there is a reasonable certainty that such permanent impairment *will* result. 13 Cyc. 217*h,* and cases cited in note 43, p. 218. After a very careful consideration of the evidence, we feel that this is that kind of a case, and that, if the jury in assessing the plaintiff's damages did consider that as one of the elements of damages in determining the amount of their verdict, they were justified by the evidence in so doing.

It is further argued: "There is still another reason why the jury should not have been instructed that they should include in the damages *'the impairment of his faculties of generation',* and why the defendant's requested instruc-

tion should have been given. That is because those special damages were not averred in the plaintiff's petition." Authorities are cited to support this contention, but the rule in this court is otherwise. In *City of Harvard v. Stiles,* 54 Neb. 26, we held: "A recovery may be had under a general allegation of damages for all injuries which necessarily follow as results of the act, the subject of complaint. They need not be specially pleaded, and this is applicable to necessarily resulting permanent effects of the injuries." This is also the rule announced by the United States supreme court. In *Denver & R. G. R. v. Harris,* 122 U. S. 597, it is held: "In trespass on the case to recover for injuries caused by gunshot wounds inflicted by defendant's servants, evidence of the loss of power to have offspring, resulting directly and proximately from the nature of the wound, may be received and considered by the jury, although the declaration does not specify such loss as one of the results of the wound." It follows from what has been said that the court did not err in giving instruction No. 7, or in refusing to give instruction No. 1, requested by defendant.

The sixth and last assignment is the general one that the court erred in overruling defendant's motion for a new trial. Finding no error in the record of the trial, this assignment must also fail.

Upon a consideration of the whole case, we do not feel at liberty to disturb the judgment entered in the court below. It is therefore

AFFIRMED.

SEDGWICK and HAMER, JJ., not sitting.