Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
10/17/2017 08:09 AM CDT

In re Interest of Hla H., a child
under 18 years of age.
State of Nebraska, appellee,
v. Hla H., appellant.
___ N.W.2d ___

Filed October 10, 2017.    No. A-16-739.

1. **Juvenile Courts: Appeal and Error.** An appellate court reviews juvenile cases de novo on the record and reaches its conclusions independently of the juvenile court's findings.
2. **Statutes: Judgments: Appeal and Error.** The meaning of a statute is a question of law, which an appellate court resolves independently of the trial court.
3. **Juvenile Courts: Rules of Evidence.** The Nebraska Evidence Rules control adduction of evidence at an adjudication hearing under the Nebraska Juvenile Code.
4. **Rules of Evidence: Hearsay: Appeal and Error.** Apart from rulings under the residual hearsay exception, an appellate court reviews for clear error the factual findings underpinning a trial court's hearsay ruling and reviews de novo the court's ultimate determination to admit evidence over a hearsay objection.
5. **Rules of Evidence: Hearsay: Words and Phrases.** Neb. Evid. R. 801, Neb. Rev. Stat. § 27-801(3) (Reissue 2016), defines hearsay as a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. One definition of "statement," for the purposes of the Nebraska Evidence Rules, is an oral or written assertion.
6. **Hearsay.** If an out-of-court statement is not offered for proving the truth of the facts asserted, it is not hearsay.
7. **Rules of Evidence: Hearsay.** Apart from statements falling under the definitional exclusions and statutory exceptions, the admissibility of an out-of-court statement depends upon whether the statement is offered

for one or more recognized nonhearsay purposes relevant to an issue in the case.

8. **Hearsay: Words and Phrases.** A verbal act is a statement that has legal significance, i.e., it brings about a legal consequence simply because it was spoken. Words that constitute a verbal act are not hearsay even if they appear to be.

9. **Hearsay.** Verbal acts, also known as statements of legal consequence, are not hearsay, because the statement is admitted merely to show that it was actually made, not to prove the truth of what was asserted in it.

10. ____. A nonhearsay purpose for offering a statement does exist when a statement has legal significance because it was spoken, independent of the truth of the matter asserted.

11. **Rules of Evidence.** Neb. Evid. R. 902, Neb. Rev. Stat. § 27-902 (Reissue 2016), states that certain documents are self-authenticating and extrinsic evidence of authenticity as a condition precedent to admissibility is not required.

12. **Rules of Evidence: Proof.** Neb. Evid. R. 901, Neb. Rev. Stat. § 27-901(1) (Reissue 2016), does not impose a high hurdle for authentication or identification. A proponent of evidence is not required to conclusively prove the genuineness of the evidence or to rule out all possibilities inconsistent with authenticity. If the proponent's showing is sufficient to support a finding that the evidence is what it purports to be, the proponent has satisfied the requirement of rule 901(1).

13. **Evidence: Testimony: Proof.** Authentication of letters may be provided by testimony.

14. **Juvenile Courts: Public Officers and Employees: Minors.** Neb. Rev. Stat. § 43-276(2) (Reissue 2016) requires that prior to filing a petition alleging that a juvenile is a juvenile as described in Neb. Rev. Stat. § 43-247(3)(b) (Supp. 2015), the county attorney shall make reasonable efforts to refer the juvenile and his or her family to community-based resources available to address the juvenile's behaviors, provide crisis intervention, and maintain the juvenile safely in the home.

15. **Statutes: Appeal and Error.** Statutory language is to be given its plain and ordinary meaning; an appellate court will not resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous.

Appeal from the Separate Juvenile Court of Lancaster County: Toni G. Thorson, Judge. Affirmed.

Joe Nigro, Lancaster County Public Defender, and James G. Sieben for appellant.

Joe Kelly, Lancaster County Attorney, and Maureen E. Lamski for appellee.

Pirtle, Bishop, and Arterburn, Judges.

Bishop, Judge.

## I. INTRODUCTION

Hla H. appeals the order of the separate juvenile court of Lancaster County adjudicating him as a juvenile within the meaning of Neb. Rev. Stat. § 43-247(3)(b) (Supp. 2015) for being habitually truant from school between August 12 and December 18, 2015. At issue in this case is whether the office of the Lancaster County Attorney (County Attorney) fulfilled the statutory duty to make reasonable efforts to refer Hla and his family to community-based resources prior to filing the juvenile petition. We conclude that the County Attorney did, and we therefore affirm the decision of the juvenile court.

## II. BACKGROUND

On January 19, 2016, the State filed a petition alleging that Hla, born in July 2000, was a juvenile within the meaning of § 43-247(3)(b), because he was habitually truant from school between August 12 and December 18, 2015. The State alleged:

Further, a description of the efforts made by the County Attorney to refer the juvenile and family to community-based resources available to address the juvenile's behavior, provide crisis intervention, and maintain the juvenile safely in the home is as follows:

1. On or about October 26, 2015, a letter from the Lancaster County Attorney's office was provided to Eh [P.] [Hla's mother] which a) referred the family to a guide of available resources in Lancaster County; b) encouraged the family to work closely with the school to access those or other resources; and c) provided information about how to contact the county's Truancy Resource Specialist if the student/family needed assistance in

- 121 -

Nebraska Court of Appeals Advance Sheets
25 Nebraska Appellate Reports
IN RE INTEREST OF HLA H.
Cite as 25 Neb. App. 118

accessing appropriate services to overcome any barri-
ers to regular school attendance that the student/family
[was] encountering.

An adjudication hearing was held on June 20 and 23,
2016. Hla and his mother, Eh P., were present at the hearing.
Because Eh's native language is Karen, an interpreter was
also present.

The State's only witness was Matthew Gerber, an instruc-
tional coordinator at Hla's school. Gerber works with students
regarding behavioral concerns, attendance, scheduling, and "all
the general responsibilities of the student's education." He
worked with Hla during the 2015-16 school year.

Exhibit 1, a "Conference Absence Report," was received
into evidence without objection. The report contained a number
of codes such as "TR" and "TD." Gerber testified that "TR"
means "truant" and indicates that the student was absent during
that period of the day. "TD" means "tardy" and indicates that
the student arrived late to that class period. The report showed
that in the fall of 2015, Hla had numerous truancies and tar-
dies in August, September, and October (and by December 18,
he had anywhere from 22 to 38 unexcused absences for each
class period).

According to Gerber, the school worked with Hla to help
him improve his attendance. One of the "primary interven-
tions" the school used was a "collab[o]rative plan meeting"
held on October 26, 2015. The meeting was attended by the
school's attendance team leader, Hla, Eh, an interpreter, and
Gerber. The purpose of the collaborative plan meeting was to
determine if there was anything preventing Hla from attending
school and to determine any "supports" that could be provided
to help improve attendance.

At the collaborative plan meeting, it was noted that Hla
had already missed a significant amount of school and that if
he continued to miss school, his grades would suffer and he
would be referred to the County Attorney once he accumulated
20 days of absences. Hla's attendance record was provided

- 122 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
25 NEBRASKA APPELLATE REPORTS
IN RE INTEREST OF HLA H.
Cite as 25 Neb. App. 118

and explained to Eh, outlining the number of absences Hla had by October 26, 2015. Exhibit 2, the "Collaborative Plan" for the meeting, was received into evidence over Hla's hearsay objection (not challenged on appeal). Gerber testified that exhibit 2 was the agenda for the meeting, and he outlined a series of questions that were asked of Hla and Eh to determine if there were any barriers to school attendance. Neither Hla nor Eh provided any explanation as to why Hla was missing school. The collaborative plan shows that the attendees considered the following to reduce barriers to improve attendance: illness, educational counseling, educational evaluation, referral to community agencies for economic services, family or individual counseling, and assisting the family in working with community services. The form indicates that illness was not a barrier to attendance, and it was determined that none of the listed actions were needed "to reduce barriers to improve regular attendance." All attendees signed the collaborative plan.

At the October 2015 meeting, Hla and his family were given a letter from the County Attorney outlining "[attendance] expectations and possible consequences, as well as resources and places to go for further information." As previously noted, Hla and Eh both signed the collaborative plan (exhibit 2), and Eh initialed the line indicating that she had been provided a copy of the County Attorney's letter. The County Attorney's letter, exhibit 3, was received into evidence over Hla's hearsay and foundation objections. The letter refers families to a school district website for a guide of available resources and encourages families to work with the school to access those or other resources. The letter also provides the contact information for the "Truancy Resource Specialist," who was available to assist the family in accessing resources. Gerber said this letter is given to all families during collaborative plan meetings at the school.

Gerber testified that the attendance team leader explained the purpose of the County Attorney's letter, and this was

- 123 -

Nebraska Court of Appeals Advance Sheets
25 Nebraska Appellate Reports
IN RE INTEREST OF HLA H.
Cite as 25 Neb. App. 118

interpreted for Eh, but that the interpreter did not translate any specific part of the letter for Eh during the meeting. Gerber believed the interpreter could explain the contents of the letter at the request of the family, but the "word-for-word" translation "couldn't be done during the meeting." There was an opportunity for questions related to the letter, but neither Hla nor Eh indicated they had any questions and neither requested additional services or support from the school to help improve Hla's attendance. Had additional services or support been requested, Gerber said he would have assisted the family in making connections with the appropriate resources. Gerber was asked if Eh was referred to an interpreter service that could be utilized "to try to put these possible community agencies at their disposal." He responded, "No, they were not referred to an interpreter service." After the October 2015 meeting, Gerber continued monitoring Hla's attendance, but his "attendance continued in a negative trajectory" until December 18, when the matter was referred to the County Attorney.

After the State rested, Hla moved to dismiss, arguing that Nebraska truancy law requires the County Attorney to make reasonable efforts to refer Hla's family to community services and that because exhibit 3 (meant to be a referral to services) was not translated for Eh, she did not receive that letter and the State did not meet its burden to prove that she received the referrals. The juvenile court overruled Hla's motion to dismiss, and Hla proceeded with his evidence.

Eh testified via an interpreter. She understood that during the fall of 2015, Hla was missing a lot of school. She tried her best "to tell him and to teach him that he needs to go to school." Eh received telephone calls from the school regarding Hla's attendance. She attended a meeting at the school concerning her son's attendance, and an interpreter was present. When counsel showed her exhibit 3 (the County Attorney's letter), Eh stated that she could not read it and did not recognize it; she cannot read English. She acknowledged, however,

- 124 -

Nebraska Court of Appeals Advance Sheets
25 Nebraska Appellate Reports
IN RE INTEREST OF HLA H.
Cite as 25 Neb. App. 118

that at the meeting, an interpreter did tell her how to access the services mentioned in the letter. Eh also acknowledged that when asked at the meeting if she had any questions about the letter, Eh said she did not have any questions. Eh testified that the interpreter also gave Eh a telephone number to use "for help." Eh was aware that Hla continued to miss school from the time of the meeting up until December 18.

Eh testified that the interpreter from the October 2015 meeting gave Eh her (the interpreter's) personal telephone number. When asked if she used interpreters for anything outside of school, Eh said "yes." For example, if she received letters or bills in the mail, Eh said, "I have a teacher and I give it to her." At the time of the adjudication hearing, Eh had not had this teacher very long, and the teacher did not attend the October 2015 meeting at the school. Eh also testified that although Hla does not speak fluent English, he is able to function in a school setting speaking English without an interpreter.

Jared Gavin is a social worker with the Lancaster County public defender's office. He was previously employed with the probation department of the Nebraska Supreme Court, where he helped with juvenile reform efforts. Gavin has viewed documents identical or substantially similar to exhibit 3 (County Attorney's letter) in the past. His understanding is that the purpose of the letter is "for the County Attorney to notify a family that assistance is available and that they were being charged with a truancy case in Lancaster County." The letter is written in English, and he had never seen one written in a different language. Gavin is familiar with the website referenced in the letter and had reviewed the website approximately a week before the hearing. According to Gavin, the website is in English and "has the traditional header for Lincoln Public Schools and lists resources available in the community. It's got approximately 18 headers and 93 separate links"; the majority of the links were in English, and he never "[came] across a link in Karen." The website also contained a telephone number for an interpretive service line. Gavin has called the

number on numerous occasions, and each time the person who answered spoke English.

During closing arguments, the State argued that Hla had missed a significant amount of school during the first 4 months of the 2015-16 school year. A formalized intervention was held in October 2015, with an interpreter present to assist the family's understanding. Eh was aware of Hla's attendance problems, understood the purpose of the meeting, and had no additional questions at the meeting. The State contends that the statutory requirement regarding reasonable efforts was met and that the State met its burden of proving the allegations in the truancy petition.

Hla argued that the only issue in the case was whether reasonable efforts were made to refer the family to community-based resources and that the burden is on the State to show these referrals were made. He contends that because Eh did not understand the County Attorney's letter and because the letter was not translated for her, she did not receive the letter the same way a similarly situated English-speaking or English-reading parent would have. Additionally, the services referenced in the letter were not available in Eh's native language. Accordingly, it was Hla's position that the "school" did less than is required to be considered a reasonable effort.

The juvenile court entered an order on July 19, 2016, finding that Hla was a juvenile as defined by § 43-247(3)(b) for being habitually truant from school between August 12 and December 18, 2015. The court found:

> It is significant that [Eh], when she testified, expressed concern about [Hla's] failure to attend school and her own efforts to encourage school attendance and that she tried her best to "tell him and teach him" that he needed to attend school. [Eh] clearly wants [Hla] to attend school and appears to have difficulty helping him achieve that goal of regular attendance.

The court found that the "school's actions" met the statutory requirements to assist Hla in correcting his truancy and

- 126 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
25 NEBRASKA APPELLATE REPORTS
IN RE INTEREST OF HLA H.
Cite as 25 Neb. App. 118

that "[f]ailure to comply with statutory requirements by the school is not a defense in this case." (The juvenile court never specifically discussed whether the County Attorney complied with the statutory requirements pursuant to Neb. Rev. Stat. § 43-276(2) (Reissue 2016).) Finally, the court found that "[i]n this case[,] clearly excessive absenteeism has been shown, [and] no defense has been presented to that absenteeism that would cause a finding [that] the petition shouldn't be adjudicated." Hla timely appealed the juvenile court's order.

## III. ASSIGNMENTS OF ERROR

Hla assigns that the juvenile court erred in finding there was sufficient evidence to prove that he had been habitually truant as alleged in the petition, because of the following: (1) Exhibit 3, a necessary component to prove the State's case, was improperly received over his hearsay and foundation objections, and (2) even if exhibit 3 was validly received, there was insufficient evidence to find that the County Attorney made reasonable efforts to refer him and his family to community-based services prior to filing the petition.

## IV. STANDARD OF REVIEW

[1] An appellate court reviews juvenile cases de novo on the record and reaches its conclusions independently of the juvenile court's findings. *In re Interest of Samantha C.*, 287 Neb. 644, 843 N.W.2d 665 (2014).

[2] The meaning of a statute is a question of law, which an appellate court resolves independently of the trial court. *Alisha C. v. Jeremy C.*, 283 Neb. 340, 808 N.W.2d 875 (2012).

## V. ANALYSIS

At issue in this case is whether the County Attorney fulfilled the statutory duty to make reasonable efforts to refer Hla and his family to community-based resources prior to filing the petition. Section 43-276(2), which became effective on August 30, 2015, states:

- 127 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
25 NEBRASKA APPELLATE REPORTS
IN RE INTEREST OF HLA H.
Cite as 25 Neb. App. 118

Prior to filing a petition alleging that a juvenile is a juvenile as described in subdivision (3)(b) of section 43-247, the county attorney shall make reasonable efforts to refer the juvenile and family to community-based resources available to address the juvenile's behaviors, provide crisis intervention, and maintain the juvenile safely in the home. Failure to describe the efforts required by this subsection shall be a defense to adjudication.

And § 43-247 states in relevant part:

The juvenile court in each county shall have jurisdiction of:

. . . .

(3) Any juvenile . . . (b) who, by reason of being wayward or habitually disobedient, is uncontrolled by his or her parent, guardian, or custodian; who deports himself or herself so as to injure or endanger seriously the morals or health of himself, herself, or others; or who is habitually truant from home or school . . . .

(Effective July 21, 2016, the relevant language applicable here is still found in § 43-247(3)(b), but commencing July 1, 2017, the statute requires that the child be 11 years of age or older.) No published case law in Nebraska has addressed the application of § 43-276(2), as set forth above, to any juvenile proceeding under § 43-247(3)(b). But, see, *In re Interest of Sandra I.*, No. A-16-371, 2016 WL 6596097 (Neb. App. Nov. 8, 2016) (selected for posting to court website).

The State argues the County Attorney's letter contained a referral to services in fulfillment of the obligation under § 43-276(2).

### 1. EXHIBIT 3

[3] Hla argues the juvenile court erred in receiving exhibit 3 (County Attorney's letter) over his hearsay and foundation objections. The Nebraska Evidence Rules control adduction of evidence at an adjudication hearing under the Nebraska Juvenile Code. *In re Interest of Ashley W.*, 284 Neb. 424, 821

- 128 -

Nebraska Court of Appeals Advance Sheets
25 Nebraska Appellate Reports
IN RE INTEREST OF HLA H.
Cite as 25 Neb. App. 118

N.W.2d 706 (2012). See, also, Neb. Rev. Stat. § 43-279(1) (Reissue 2008).

The undated typewritten letter was addressed to the "Parent(s) or Guardian(s)" of Hla, whose name was handwritten. The letterhead said "**Joe Kelly**[,] Lancaster County Attorney" and contained the seal of Lancaster County, Nebraska. The letter concluded with:

> Sincerely,
> Joe Kelly
> Lancaster County Attorney
> [Signature of Alicia B. Henderson]
> Alicia B. Henderson
> Chief Deputy/Juvenile Division
> Lancaster County Attorney's Office

For the reasons set forth below, we conclude the juvenile court did not err in admitting the letter into evidence.

### (a) Hearsay

Hla asserts the County Attorney's letter is hearsay and is not admissible under any applicable hearsay exception. He claims the State offered the letter to show that the County Attorney referred Hla and his family to community-based resources prior to the filing of the petition, as required by § 43-276(2).

[4] Apart from rulings under the residual hearsay exception, we review for clear error the factual findings underpinning a trial court's hearsay ruling and review de novo the court's ultimate determination to admit evidence over a hearsay objection. *State v. Draganescu,* 276 Neb. 448, 755 N.W.2d 57 (2008). Here, the record shows only that the court overruled the objection without explanation.

[5] Neb. Evid. R. 801, Neb. Rev. Stat. § 27-801(3) (Reissue 2016), defines hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted[.]" One definition of "statement," for the purposes of

- 129 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
25 NEBRASKA APPELLATE REPORTS
IN RE INTEREST OF HLA H.
Cite as 25 Neb. App. 118

the Nebraska Evidence Rules, is "an oral or written assertion." Rule 801(1)(a).

[6,7] The Nebraska Supreme Court has stated, "If an out-of-court statement is not offered for proving the truth of the facts asserted, it is not hearsay." *State v. McCave*, 282 Neb. 500, 531, 805 N.W.2d 290, 316-17 (2011). But it does not necessarily follow that such a statement is admissible in a particular case. *Id*. Apart from statements falling under the definitional exclusions and statutory exceptions, the admissibility of an out-of-court statement depends upon whether the statement is offered for one or more recognized nonhearsay purposes relevant to an issue in the case. *Id*.

[8] The State contends that the letter was offered for a permissible, nonhearsay purpose. Specifically, that the letter had legal significance, independent of the truth of the matter asserted, because it qualified as a "verbal act." Brief for appellee at 7. "A verbal act is a statement that has legal significance, i.e., it brings about a legal consequence simply because it was spoken." *McCave*, 282 Neb. at 531, 805 N.W.2d at 317. "[W]ords that constitute a verbal act are not hearsay even if they appear to be." *Id*. Common examples of verbal acts are words that constitute contractual agreements or terms, or words that establish an agency relationship; they are words that have legal significance independent of their truth. See *McCave, supra*.

[9,10] Legal commentators have stated:

> A verbal act is an utterance of an operative fact that gives rise to legal consequences. Verbal acts, also known as statements of legal consequence, are not hearsay, because the statement is admitted merely to show that it was actually made, not to prove the truth of what was asserted in it.

5 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence*, § 801.11[3] (Joseph M. McLaughlin ed., 2d ed. 2017). See, also, *McCave, supra* (where testimony is offered to establish existence of statement rather than to prove truth of

- 130 -

Nebraska Court of Appeals Advance Sheets
25 Nebraska Appellate Reports
IN RE INTEREST OF HLA H.
Cite as 25 Neb. App. 118

that statement, hearsay rule does not apply; this does not mean that any out-of-court statement is admissible to show that it was made; but nonhearsay purpose for offering statement does exist when statement has legal significance because it was spoken, independent of truth of matter asserted).

As another commentator has explained:

> If the mere fact that the words were spoken creates, alters, or completes a legal relationship then the assertion is not hearsay. If the words spoken out-of-court have a legal effect of their own, not hearsay. If the utterance is the issue, not hearsay. Sometimes the words themselves are the issue (or, often more precisely, *an* issue). Sometimes the words themselves are the principal fact in controversy. Examples include:
>
> • In a breach of contract action, the terms of a contract.
> • In a defamation action, the allegedly libelous words.
> • In an employment discrimination case, the racially derogatory words that created the hostile work environment.
> • In a tort action for intentional infliction of emotional distress, words used to inflict the distress.
> • In a criminal action, words that are an element of a crime . . . ; or words that are at issue in an affirmative defense to a criminal action . . . .
>
> These cases involve words that have a legal effect that is not concerned with the out-of-court declarant's memory, perceptions, or honesty. In these cases, the link between the words spoken out of court and the issues in the case is direct, without having to travel through the sincerity of the person who spoke the words or the accuracy of that person's perceptions or memory. This is one way of looking at the question of whether counsel is offering the out-of-court assertion to prove the truth of the matter asserted or just to show that it was made.

G. Michael Fenner, The Hearsay Rule 25-26 (3d ed. 2013). See, e.g., *U.S. v. Dupree*, 706 F.3d 131 (2d Cir. 2013) (statements

- 131 -

Nebraska Court of Appeals Advance Sheets
25 Nebraska Appellate Reports
IN RE INTEREST OF HLA H.
Cite as 25 Neb. App. 118

that in themselves affect parties' legal rights are not hearsay; temporary restraining order issued to restrain defendant from removing assets was not hearsay, as it was verbal act and was offered as well to show defendant was on notice); *State v. McCave*, 282 Neb. 500, 531, 805 N.W.2d 290, 317 (2011) (defendant's stepmother's out-of-court statements giving defendant permission to be on property were "verbal act[s]" relevant to central issue in trespass case of whether defendant intended to be on property knowing he was not licensed or privileged to do so, and thus statements were not inadmissible as hearsay).

In the instant case, the County Attorney's letter was offered to show that Hla and his family had been referred by the County Attorney to community-based resources to help address Hla's truancy problem before a petition was filed. Whether the letter had a legal effect does not depend upon the out-of-court declarant's credibility. See *McCave, supra.* And the letter had independent legal significance because it shows that referrals were made, but does not go to the truth of the matter asserted, i.e., that the efforts and referrals were reasonable. The County Attorney's letter (exhibit 3) constituted a verbal act and was not hearsay.

### (b) Foundation

Exhibit 3 was admitted into evidence based on the testimony of Gerber, an instructional coordinator at Hla's school. Hla contends that exhibit 3 should not have been admitted because insufficient foundation was laid to authenticate the letter. Specifically, he argues that Gerber was not the author of the letter, and he "could not identify when the letter was drafted, who drafted the letter, or properly attest to the accuracy and validity of the signature." Brief for appellant at 11. In support of his argument, Hla cites to *Richards v. McClure*, 290 Neb. 124, 858 N.W.2d 841 (2015). However, the *Richards* case, which involved an anonymous letter offered into evidence at

- 132 -

Nebraska Court of Appeals Advance Sheets
25 Nebraska Appellate Reports
IN RE INTEREST OF HLA H.
Cite as 25 Neb. App. 118

a harassment protection order hearing, is factually distinguishable from the instant case.

[11] Although Hla argues that insufficient foundation was laid via Gerber's testimony to authenticate the County Attorney's letter, Hla fails to consider that the letter might be self-authenticating under Neb. Evid. R. 902, Neb. Rev. Stat. § 27-902 (Reissue 2016). Rule 902 states in relevant part:

Extrinsic evidence of authenticity as a condition precedent to admissibility is not required with respect to the following:

(1) A document bearing a seal purporting to be that of the United States, or of any state, district, commonwealth, territory, or insular possession thereof, or the Panama Canal Zone or the Trust Territory of the Pacific Islands, *or of a political subdivision, department, officer, or agency thereof*, and a signature purporting to be an attestation or execution.

(Emphasis supplied.) Here, the document's letterhead said "**Joe Kelly**[,] Lancaster County Attorney" and contained the seal of Lancaster County. It was signed by "Alicia B. Henderson[,] Chief Deputy/Juvenile Division[,] Lancaster County Attorney's Office." Thus, we conclude that the County Attorney's letter was self-authenticating under rule 902(1).

[12] Even if the letter was not self-authenticating under rule 902(1), we would still find that the letter was properly authenticated by Gerber's testimony. Neb. Evid. R. 901, Neb. Rev. Stat. § 27-901(1) (Reissue 2016), states, "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Rule 901 does not impose a high hurdle for authentication or identification. *State v. Elseman*, 287 Neb. 134, 841 N.W.2d 225 (2014). A proponent of evidence is not required to conclusively prove the genuineness of the evidence or to rule out all possibilities inconsistent with authenticity. *Id.* If the proponent's showing is sufficient to support a finding that

- 133 -

Nebraska Court of Appeals Advance Sheets
25 Nebraska Appellate Reports
IN RE INTEREST OF HLA H.
Cite as 25 Neb. App. 118

the evidence is what it purports to be, the proponent has satisfied the requirement of rule 901(1). *Id*. Because authentication rulings are necessarily fact specific, a trial court has discretion to determine whether evidence has been properly authenticated. *Id*.

[13] Authentication of letters may be provided by testimony. See rule 901(2)(a). See, also, *Richards, supra*. To properly authenticate a letter, the witness must provide personal knowledge regarding the important facts surrounding the letter. *Id*. See *State v. Timmerman*, 240 Neb. 74, 480 N.W.2d 411 (1992).

Gerber testified that one of his job duties includes working with students who are excessively absent. One of the "primary interventions" used with Hla was the collaborative plan meeting held on October 26, 2015. The document identified as exhibit 3 is the County Attorney's letter that was provided to Hla and his mother on October 26. Gerber stated that the County Attorney provided the form letter, a copy of which is printed out and given to all families during collaborative plan meetings at the school; the letter outlines resources and places to go for further information. Gerber's testimony confirmed the source of the letter and satisfied the requirement to show the letter was what it claimed to be: a letter from the County Attorney that was provided to the family of a child struggling with attendance at school, referring them to available community resources. Thus, the juvenile court did not err by receiving the letter over Hla's foundation objection.

## 2. Reasonable Efforts

Hla argues that even if exhibit 3 was validly received, there was insufficient evidence to find the County Attorney made reasonable efforts to refer him and his family to community-based services prior to filing the petition as required by § 43-276(2). Hla asserts the letter was insufficient to fulfill the requirements of § 43-276(2), because it did "not give [him] any information about services that will address the specific

barriers that make attendance at school difficult." Brief for appellant at 14. He argues the letter "is a generic form letter, given to every family that has a juvenile struggling with school attendance," and "[i]n this case, the letter was not even in a language that the person it was given to could comprehend." *Id*. While it is true the letter is a form letter, that factor does not disqualify its contents from consideration of the County Attorney's efforts under § 43-276(2).

[14,15] Section 43-276(2) requires the County Attorney to "make reasonable efforts to refer the juvenile and family to community-based resources available to address the juvenile's behaviors, provide crisis intervention, and maintain the juvenile safely in the home." Statutory language is to be given its plain and ordinary meaning; an appellate court will not resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous. *In re Interest of Danajah G. et al.*, 23 Neb. App. 244, 870 N.W.2d 432 (2015). There is no ambiguity in the statute's language; its meaning is straightforward. We therefore review the record to determine whether the County Attorney made reasonable efforts to refer Hla and his family to community-based resources to address matters related to Hla's habitual truancy.

At the collaborative plan meeting, the school provided Hla and Eh with the letter prepared by the County Attorney. The letter specifically requested that the family "review the 'Lancaster County Resource Guide' found under 'Community Resources' on LPS's Parent Page at http://www.lps.org/parents/." The letter advised the family to follow up with any programs described in the guide that "may help you address your student's behaviors, provide crisis intervention, and maintain your student safely in your home." The letter also stated, "If you need help accessing any of those resources or determine that some other kind of assistance would be most beneficial to your family, we ask that you work closely with your school as part of the collaborative planning process." The letter also advised that there is a person on staff at the "Lincoln/Lancaster County

- 135 -

Nebraska Court of Appeals Advance Sheets
25 Nebraska Appellate Reports
IN RE INTEREST OF HLA H.
Cite as 25 Neb. App. 118

Human Services Office" who can assist the family in accessing resources or determining whether other resources are available to address "any barriers" to the student's regular attendance at school. The telephone number and office hours of the "Truancy Resource Specialist" were provided.

Gerber testified this letter was provided to Hla and his mother at the collaborative plan meeting in an effort to improve attendance. He confirmed the letter was meant to serve as a way to assist the family in getting the necessary community services. Both Hla and Eh signed the collaborative plan. And Eh initialed Hla's collaborative plan confirming her receipt of the letter. Eh's initials appear in the blank line next to this statement in the plan: "7. Provided a copy of the County Attorney Community-Based Resources Referral Letter to the family, as indicated by their initials. Parent/Guardian initials ____." Eh testified that at the meeting, an interpreter told her how to access the services mentioned in the letter and gave her a telephone number to use "for help." When asked at the meeting if she had any questions about the letter, Eh said she did not have any questions. Hla was also present for this meeting and asked no questions about the information contained in the letter.

It is important to note that in this case, when Hla, Eh, and school officials went through the collaborative plan, no specific barriers to Hla's attendance were identified. The collaborative plan states that the attendees considered the following to reduce barriers to improve attendance: illness, educational counseling, educational evaluation, referral to community agencies for economic services, family or individual counseling, and assisting the family in working with community services. It was determined that illness was not a barrier to attendance, and it was further determined that none of the listed actions were needed "to reduce barriers to improve regular attendance." Therefore, it is unclear how the letter failed to "give [Hla] any information about services that will address the specific barriers that make attendance at school difficult," brief for appellant at 14,

- 136 -

Nebraska Court of Appeals Advance Sheets
25 Nebraska Appellate Reports
IN RE INTEREST OF HLA H.
Cite as 25 Neb. App. 118

when no barriers were identified or otherwise discussed by Hla or his mother at the meeting.

Furthermore, we do not find the language barrier to be an issue in this case. As noted previously, Hla does not raise this issue as to his own understanding of the letter's content; rather, he focuses on Eh's inability to understand the letter. Eh was given a copy of the letter at the October 2015 meeting. Although the letter was not written in Eh's native language, Eh testified that the interpreter told her how to access the services mentioned in the letter. And when asked at the meeting if she had any questions about the letter, Eh said she did not have any questions. Additionally, Gerber testified the contents of the letter could be translated at the request of the family. And Eh testified the interpreter gave Eh her (the interpreter's) personal telephone number. Finally, when Eh was asked if she used an interpreter "for anything outside of school," she said, "Yes." Hla and his family clearly had sufficient resources available to them to have the letter translated if necessary and to help them access any necessary community programs. However, Gerber testified neither Hla nor Eh requested additional services or "supports" from the school to help improve Hla's attendance. Had additional services or support been requested, Gerber said he would have assisted the family in making connections with the appropriate resources.

The record before us reveals that the County Attorney and the school engaged in a coordinated effort to refer community-based resources to Hla and his family to help correct attendance problems before a petition for habitual truancy was filed in the juvenile court. The County Attorney's letter referred the family to various available community-based resources, which included website resources, as well as specific contact information for a "Truancy Resource Specialist." Hla and his family were provided an opportunity to ask questions about the resources at the collaborative plan meeting, and they could have sought additional help with regard to accessing those resources. Also, the interpreter at the meeting provided

- 137 -

Nebraska Court of Appeals Advance Sheets
25 Nebraska Appellate Reports
IN RE INTEREST OF HLA H.
Cite as 25 Neb. App. 118

personal contact information for further assistance to the family. Upon our de novo review, we find there was sufficient evidence that the County Attorney complied with the "reasonable efforts" requirement of § 43-276(2) as applied to the habitual truancy provision of § 43-247(3)(b). To be clear, this court's conclusion with regard to the County Attorney's "reasonable efforts" in this case is limited solely to efforts pertaining to habitual truancy and not to other juvenile behaviors encompassed by § 43-247(3)(b).

## VI. CONCLUSION

For the reasons stated above, we find the County Attorney met the statutory obligation under § 43-276(2) as applied to the habitual truancy provision of § 43-247(3)(b). We further find the juvenile court properly adjudicated Hla as a juvenile within the meaning § 43-247(3)(b) for being habitually truant from school.

Affirmed.