IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

IN RE INTEREST OF AUDRINA P.

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

IN RE INTEREST OF AUDRINA P., A CHILD UNDER 18 YEARS OF AGE.

STATE OF NEBRASKA, APPELLEE,
V.
SUSANNE M., APPELLANT.

Filed February 13, 2024.    No. A-23-388.

Appeal from the Separate Juvenile Court of Lancaster County: REGGIE L. RYDER, Judge.
Affirmed.

Joshua D. Barber, of Barber & Barber, P.C., L.L.O., for appellant.

Patrick F. Condon, Lancaster County Attorney, and Maureen E. Lamski for appellee.

RIEDMANN, ARTERBURN, and WELCH, Judges.

ARTERBURN, Judge.

INTRODUCTION

Susanne M. appeals from the order of the separate juvenile court of Lancaster County which adjudicated her minor child, Audrina P., under Neb. Rev. Stat. § 43-247(3)(a) (Reissue 2016). Susanne argues that the juvenile court erred by granting a motion to allow Audrina to testify outside of Susanne's presence and by finding that the allegations in the State's petition were proven by a preponderance of the evidence. Upon our de novo review of the record, we affirm.

BACKGROUND

Susanne is Audrina's maternal grandmother and has been Audrina's adoptive mother since July 2022. On February 26, 2023, Audrina was removed from the home by Lincoln Police Department officers and placed into the emergency custody of the Nebraska Department of Health and Human Services (DHHS). On February 28, the State filed a petition alleging Audrina was a

- 1 -

juvenile as defined by § 43-247(3)(a). Specifically, the petition alleged that Audrina was in a situation dangerous to life or limb or injurious to her health or morals while residing with Susanne.

On April 18, 2023, Audrina's guardian ad litem (GAL) filed a motion to allow Audrina to testify outside of Susanne's presence (the motion to allow). Susanne opposed the motion. On April 21, a hearing was held on the motion to allow. Sarah Kirkwood, an outpatient therapist at Bloom Counseling, has been Audrina's therapist since December 2019 and has also conducted family sessions with Audrina and Susanne. In March 2023, Kirkwood diagnosed Audrina with unspecified trauma and stressor related disorder. Kirkwood explained that the disorder presents with several symptoms which indicate that an individual has experienced trauma. These symptoms include avoidance, issues with concentration, and an inability to regulate emotions when triggered by external stimuli.

Kirkwood testified that it would be harmful for Audrina to testify in front of Susanne. Kirkwood explained that in her experience working with Audrina and Susanne, there were times that Susanne exhibited "emotional reactivity that [] caused Audrina to have some higher distress, which could impact the way that [Audrina] answers or the way that [Audrina is] responding." Kirkwood also testified that at the age of 13, Audrina's "emotional regulation system of the brain is not fully developed. This is also a pivotal time where she is really building attachment and trust and understanding the world and building that safe and security about the world and her perspective which plays into that." Kirkwood believed that Susanne's presence and emotional reactivity to Audrina's testimony would cause Audrina to have an emotional reaction that could be harmful to her, cause prolonged emotional distress, or cause "fear for what may happen afterwards or how [Audrina's] responses are going to be received." For these reasons, Kirkwood believed that it was in Audrina's best interests to testify outside of Susanne's presence.

Susanne testified that she would be able to maintain her composure if Audrina testified in her presence. Susanne believed that Audrina would be less likely to "fabricate information" if Susanne were present during her testimony. The juvenile court found that the evidence supported excluding Susanne from the courtroom during Audrina's testimony and granted the motion. The court ruled that during Audrina's testimony, Susanne's attorney would be present in the courtroom with the ability to cross-examine Audrina. Susanne would be relocated to a nearby conference room but would be able to observe everything in the courtroom via video link. The court also stated it would take breaks to allow Susanne and her attorney to visit together and discuss any questions she may want her attorney to ask "to make sure that her due process needs and rights are satisfied in this case."

On April 24, 2023, an adjudication hearing was held on the State's petition. Courtney Kohout, a supervisor with Child Services Specialists, supervised Audrina's DHHS case. Kohout testified that before Susanne adopted Audrina, there were "a handful of placement concerns" reported to DHHS. Kohout defined a placement concern as "a report of allegations that rise to a level of concern that need to be addressed. However, they are not an accepted intake for a full-blown investigation." Kohout testified that when DHHS receives such a call, it immediately makes a report of that call. Further, she testified that these reports are kept as part of the normal records of DHHS. Kohout identified exhibit 4 as reports of placement concerns regarding Audrina and Susanne received by the DHHS Hotline for Abuse and Neglect. Susanne's counsel objected to the admission of exhibit 4 on foundational grounds and also argued that there were multiple

layers of hearsay in the records. The juvenile court overruled the objection in part but received exhibit 4 for the limited purpose to demonstrate that placement concerns were reported to DHHS prior to Audrina's adoption. The court did not receive the exhibit for the truth of the matter asserted. The court specifically stated that it would not consider whether the events included in the records did or did not happen.

Throughout Audrina's testimony, the court adhered to the procedures it outlined at the hearing on the motion to allow. Audrina, who was 13 years old at the time of the hearing, testified that before February 2023, she had lived with Susanne for approximately 4 years. Audrina described her relationship with Susanne as "[n]ot good," explaining that they argue every day. Audrina testified that when they argued, Susanne would call her names such as "bitch," "whore," and "slut." Susanne denied calling Audrina by such names.

Audrina testified that on February 25, 2023, she asked Susanne if she could spend the night at her friend Jaylee's house. However, Audrina actually spent the night at her friend Kayla's house. Audrina explained that she lied to Susanne because Susanne did not like Kayla's mom, and Audrina did not want to argue with Susanne. Susanne discovered that Audrina had lied to her and called the police. Susanne informed Officer Nicholas Vest that Audrina was not at Jaylee's house and identified Audrina as a runaway. Vest contacted Audrina on her cell phone and convinced her to meet him at the police station.

When Audrina arrived at the police station, she and Vest talked for roughly an hour. Vest testified that Audrina was crying, that she was "pretty emotional," and that she "[e]xpressed quite a bit of concerns of safety at the home." Audrina told Vest that she was scared to go home because she feared Susanne would hurt her as she had in the past. Audrina asked to stay somewhere other than Susanne's apartment. Vest recommended that Audrina go back to the apartment, stay in her own room, and avoid contact with Susanne for the night. Vest accompanied Audrina back to Susanne's apartment. Vest testified that Audrina was very hesitant to enter the home and that her response was an indication that "something else [was] going on."

After Audrina entered the apartment, she went directly to her room and stayed there for the entire night. The next day, Audrina and Susanne went to the grocery store together. They argued about the previous night and whether Audrina should lose her phone privileges. Audrina testified that when they returned to Susanne's apartment, Susanne told her not to enter the apartment because "[Audrina] was a whore." Audrina testified that she entered the apartment and attempted to enter her room when Susanne "barged up in [Audrina's bedroom] door and then pulled [her] hair out, [and] started punching [her] in the face" with a closed fist. Audrina noted that her hair was in a ponytail at the time. She testified that it hurt when Susanne pulled on her ponytail. Audrina told Susanne to stop pulling on her hair, pushed Susanne out of the bedroom, and called the police.

Officer Major Armstead and another officer responded to Susanne's apartment for the disturbance call. Upon their arrival, the officers separated Audrina and Susanne. Armstead observed Audrina and described her as "pretty upset" and "[p]retty sad." Susanne told Armstead that she and Audrina had been fighting, and when Audrina attempted to disengage from the argument and enter her bedroom, she grabbed Audrina's ponytail.

After being notified of Audrina's disturbance call, Vest responded to Susanne's apartment. Armstead and the other officer were present when he arrived. Vest testified that Audrina told him that Susanne had pulled her hair. He also observed that Audrina's left eye was swollen, and she

was emotionally distressed. Neither Vest nor Armstead recalled any reports that Susanne had punched Audrina. The officers determined that Audrina should be removed from Susanne's home and placed her into DHHS custody.

Susanne testified to the same events and acknowledged that she and Audrina had a disagreement on February 25, 2023, that continued into the next day. Susanne admitted that she grabbed Audrina's ponytail but denied punching her.

Audrina testified that the February 2023 incident was not the only time she and Susanne had engaged in a physical altercation which resulted in police involvement. Audrina recalled another incident in Fall 2022 when Susanne was dropping her off at school. Audrina testified that Susanne was angry with her and wanted to take her phone. Audrina would not let Susanne take her phone and attempted to exit the vehicle. Audrina testified that during the course of this argument, Susanne pulled her hair, slammed her head onto the middle console, and said she was going to choke Audrina. Audrina claimed that another parent overheard the comment and reported it to the police. According to Audrina, she spoke with the police but did not tell them what happened because she feared what would happen if she told the truth. At the time, Audrina did not want to be removed from Susanne's home.

Susanne denied that she had threatened Audrina or grabbed her hair during the Fall 2022 incident. Susanne testified that during this incident, Audrina had thrown her phone at Susanne, which caused a bruise on Susanne's chin.

At the conclusion of all the evidence, the juvenile court took the matter under advisement. The court entered an order finding that Audrina's testimony was credible and that the State had met its burden to prove the allegations in the petition were true by a preponderance of the evidence. Having adjudicated Audrina to be a child within the meaning of § 43-247(3)(a), the court entered an order continuing Audrina in out-of-home placement.

Susanne appeals.

## ASSIGNMENTS OF ERROR

Susanne assigns, summarized and restated, that the juvenile court erred by (1) granting the motion to allow Audrina to testify outside of Susanne's physical presence, (2) overruling her evidentiary objections to exhibit 4, and (3) finding that the State proved the allegations in the petition by a preponderance of the evidence.

## STANDARD OF REVIEW

Juvenile cases are reviewed de novo on the record, and an appellate court is required to reach a conclusion independent of the juvenile court's findings; however, when the evidence is in conflict, an appellate court may consider and give weight to the fact that the trial court observed the witnesses and accepted one version of the facts over the other. *In re Interest of Prince R.*, 308 Neb. 415, 954 N.W.2d 294 (2021).

- 4 -

MOTION TO ALLOW AUDRINA TO TESTIFY
OUTSIDE PRESENCE OF SUSANNE

Susanne makes several arguments regarding the GAL's motion to allow Audrina to testify outside of Susanne's presence and the juvenile court's decision to grant the motion. We address each argument in turn.

Susanne first argues on appeal that the State, not the GAL, was the proper party to file the motion. We initially note that the record demonstrates that at the hearing, the State joined in the motion and advocated in its favor. However, we ultimately find that we need not resolve this issue. Susanne did not raise this issue in the juvenile court either before or at the time of the hearing. Generally, when an issue is raised for the first time in an appellate court, it will be disregarded inasmuch as a lower court cannot commit error in resolving an issue never presented and submitted to it for disposition. *State v. Hammond*, 315 Neb. 362, 996 N.W.2d 270 (2023). Because Susanne did not raise the issue of whether the GAL was authorized to bring the motion in the juvenile court, it is not properly preserved for appellate review.

Susanne next assigns that the juvenile court erred by overruling her objections to Kirkwood's testimony during the hearing on the GAL's motion to allow. We disagree. The Nebraska Supreme Court has held that:

> when the State seeks to have a child testify in chambers at an adjudication or termination hearing, the State must give notice of such request to the parents or their counsel prior to the adjudication or termination hearing. Further, a juvenile court must conduct a hearing separate from the adjudication or termination hearing to determine whether reasons exist for excluding the parents from the child's testimony at the adjudication or termination hearing.

*In re Interest of Danielle D. et al.*, 257 Neb. 198, 206, 595 N.W.2d 544, 550 (1999). The Court found that a child could be allowed to testify outside the parent's presence if it was demonstrated that their presence "would be harmful to the child" and "when there are legitimate concerns about the child's testifying. . . ." *Id.* Once the State has shown that reasons exist to exclude the parents from the child's testimony, it is then within the juvenile court's discretion to determine whether the child will be allowed to testify outside of the parent's presence. *Id.* The Supreme Court has rejected attempts to expand the State's evidentiary burden beyond these standards. See *In re Interest of Brian B. et al.*, 268 Neb. 870, 689 N.W.2d 184 (2004) (State need only show that there are legitimate concerns regarding risk of harm to child if he or she is required to testify in presence of parent).

In this case, notice was given, and a separate hearing was held on the issue of whether Audrina would be permitted to testify outside of Susanne's presence. Based on Kirkwood's testimony, the juvenile court determined that there were legitimate concerns regarding Audrina testifying in Susanne's presence and that the State had shown a risk of Audrina being harmed if compelled to do so. Susanne argues that this determination was made in error because the GAL failed to establish the necessary foundation for the admission of Kirkwood's "expert testimony." However, Kirkwood did not testify solely as an expert witness. She testified to her observations of

Audrina and Susanne during their therapy sessions. Thus, Kirkwood was a fact witness to the extent that she testified to her past observations. Her testimony regarding her concerns for Audrina's wellbeing was based on her observations of Audrina and Susanne together. Assuming without deciding that these "concerns" constituted expert testimony, we find that sufficient foundation was laid for Kirkwood's opinions.

Finally, Susanne contends that her constitutional rights were violated when the juvenile court allowed Audrina to testify outside of Susanne's presence. Because this is a juvenile proceeding and not a criminal case, the proper analysis is whether Susanne's due process rights were violated. See *In re Interest of Brian B. et al., supra*.

The concept of due process embodies the notion of fundamental fairness and defies precise definition. *Id.* Neb. Rev. Stat. § 43-279.01(1)(e) (Reissue 2016) states that when a petition alleges a juvenile to be within the provisions of § 43-247(3)(a) and a parent appears, the court shall inform the parties of the right to confront and cross-examine witnesses. In deciding due process requirements in a particular case, appellate courts must weigh the interest of the parent, the interest of the State, and the risk of erroneous decision given the procedures in use. *In re Interest of Brian B. et al., supra*. Due process is flexible and calls for such procedural protections as the particular situation demands. *Id.*

We have already reviewed the requirements of due process in the circumstance where the State seeks to have a child testify outside of the parent's presence at a juvenile adjudication hearing. The State must give notice of its intent, and the juvenile court must conduct a separate hearing and determine whether reasons exist to exclude the parent from the child's testimony. See *In re Interest of Danielle D. et al.*, 257 Neb. 198, 595 N.W.2d 544 (1999). See, also, *In re Interest of Brian B. et al., supra*. Once the State has shown that legitimate concerns exist sufficient to exclude the parent, the juvenile court may permit the child to testify outside of his or her parent's presence. *Id.*

We find that Kirkwood's testimony showed that there were legitimate concerns about Audrina testifying in front of Susanne. Based on her therapy sessions with Audrina and Susanne, Kirkwood believed that it would be harmful for Audrina to testify in front of Susanne. Kirkwood explained that Susanne's presence and likely reactions to Audrina's testimony would cause Audrina prolonged emotional distress or fear and could impact the way Audrina testified. In our de novo review, we conclude that this showing was sufficient and that the juvenile court did not err when it allowed Audrina to testify outside of Susanne's presence.

Nonetheless, Susanne argues that her right to confront Audrina was violated. We find that upon our de novo review, the procedures utilized by the juvenile court during Audrina's testimony adequately safeguarded Susanne's due process rights, including her right to confront witnesses. Although Susanne was not allowed to personally confront Audrina during her testimony, Susanne's attorney was present in the courtroom during Audrina's direct examination and was permitted to fully cross-examine her. Susanne was able to hear and see Audrina's testimony in real time via video link. The court took several breaks to allow counsel to converse with Susanne during Audrina's testimony. This allowed Susanne to provide input to her attorney with respect to questions that could be asked on cross-examination. In *In re Interest of Brian B. et al.*, 268 Neb. 870, 689 N.W.2d 184 (2004), the same set of safeguards were utilized during a juvenile adjudication hearing, and the Supreme Court concluded that the procedures did not violate any

right of fundamental fairness or confrontation. We reach the same conclusion in this case. This assignment of error fails.

Susanne alleges that the juvenile court inappropriately considered Kohout's testimony and received exhibit 4, the reports of placement concerns regarding Audrina and Susanne, in violation of the rules of evidence. Specifically, she argues that no proper foundation was laid for exhibit 4 and that the records in the exhibit are hearsay. She claims that the admission of the exhibit was prejudicial to her because the records are the only evidence relevant to allegation (b) in the State's petition which asserts that "[p]rior to [Audrina's] adoption there were some placement concerns that were reported."

The Nebraska Evidence Rules control adduction of evidence at an adjudication hearing under the Nebraska Juvenile Code. *In re Interest of Lilly S. & Vincent S.*, 298 Neb. 306, 903 N.W.2d 651 (2017). See, also, Neb. Rev. Stat. § 43-279(1) (Reissue 2016). Apart from rulings under the residual hearsay exception, we review for clear error the factual findings underpinning a trial court's hearsay ruling and review de novo the court's ultimate determination to admit evidence over a hearsay objection. *In re Interest of Hla H.*, 25 Neb. App. 118, 903 N.W.2d 664 (2017).

The juvenile court determined that Kohout's testimony properly laid the foundation for exhibit 4. We find no clear error in this determination. As a DHHS employee, Kohout was familiar with DHHS records, including reports of placement concerns. She testified that these reports are maintained as part of the normal record keeping protocols of DHHS and that when the hotline receives a call, it immediately makes a record of that call. Kohout had also observed the specific reports of placement concerns concerning Audrina and Susanne, and thus had the background and knowledge to identify exhibit 4. Susanne's foundational objections to exhibit 4 fail.

Susanne also argues that the exhibit should have been excluded because the State did not establish that the exhibit was admissible under any hearsay exception. This assignment of error is without merit. If an out-of-court statement is not offered for the purpose of proving the truth of the facts asserted, it is not hearsay. *State v. Baker*, 280 Neb. 752, 789 N.W.2d 702 (2010). But it does not necessarily follow that such a statement is admissible; the admissibility of the statement depends upon whether the statement is offered for one or more recognized nonhearsay purposes relevant to an issue in the case. *Id.* Nonhearsay purposes include proving a statement's impact on a listener and showing a statement of legal significance. See *State v. McCave*, 282 Neb. 500, 805 N.W.2d 290 (2011).

The State specifically stated that it was offering exhibit 4 not for the truth of the matter asserted in the allegations therein, but just to show that placement concerns had been reported prior to Audrina's adoption. The juvenile court received exhibit 4 only for that limited purpose. The court specifically stated that it would not consider whether the events in the reports did or did not happen. However, the State did not identify the specific nonhearsay purpose for which the making of the statement is relevant and probative in this case.

On appeal, the State does not address this omission, but instead argues that the exhibit qualifies for the business records exception to the hearsay rule. The party seeking to admit a business record under this exception to the hearsay rule bears the burden of establishing foundation

under a three-part test. *State v. Walker*, 29 Neb. App. 292, 953 N.W.2d 6 (2020). First, the proponent must establish that the activity recorded is of a type that regularly occurs in the course of the business' day-to-day activities. *Id.* Second, the proponent must establish that the record was made as part of a regular business practice at or near the time of the event recorded. *Id.* Third, the proponent must authenticate the record by a custodian or other qualified witness. *Id.*

Based on Kohout's testimony, we find that the State laid sufficient foundation for the exhibit to be received as a business record. The exhibit would have been properly admitted under the business records exception, and thus, the court could have received exhibit 4 for purposes of the truth of the matter asserted. Based on this determination, we cannot find that the court's decision to receive it for only a limited purpose resulted in prejudice to Susanne. For these reasons, we reject this assignment of error.

SUFFICIENCY OF EVIDENCE

Susanne contends that the allegations in the petition were not proven by a preponderance of the evidence. We disagree and conclude that there was sufficient evidence to support the juvenile court's order of adjudication.

The purpose of the adjudication phase is to protect the interests of the child. *In re Interest of Xandria P.*, 311 Neb. 591, 973 N.W.2d 692 (2022). At the adjudication stage, in order for a juvenile court to assume jurisdiction of minor children under § 43-247(3)(a), the State must prove the allegations of the petition by a preponderance of the evidence. *In re Interest of Xandria P., supra.* It is not necessary for the State to prove that the child has actually suffered physical harm, only that there is a definite risk of future harm. *In re Interest of Taeven Z.*, 19 Neb. App. 831, 812 N.W.2d 313 (2012).

In its petition, the State alleged that Audrina was a juvenile in a situation dangerous to life or limb or injurious to her health or morals while residing with Susanne. The State based its petition on the following allegations:

> (a) [Audrina] was adopted by [Susanne] after [Audrina's] parents failed to correct conditions that led to her removal from their care.
> (b) Prior to the adoption there were some placement concerns that were reported.
> (c) On or about February 25, 2023, [Audrina] reported not feeling safe in [Susanne's] home and not wanting to return home after being reported on run. [Audrina] reported incidents of verbal abuse and threatening and/or assaultive behavior by [Susanne] but in the past she had been afraid to report and/or confirm incidents of abuse. [Audrina] was returned home.
> (d) On or about February 26, 2023, [Audrina] was involved in an altercation with [Susanne] in which [Susanne] pulled her hair and [Audrina] sustained minor injury in her attempts to get away from [Susanne].
> (e) The above matter places said juvenile(s) at risk of harm.

At the adjudication hearing, the State presented evidence to support these allegations. Testimony by Audrina, Vest, Armstead, and Kohout were admitted into evidence. Susanne presented opposing testimony.

Susanne first argues that if the State failed to prove any one or more of the allegations in the petition, the juvenile court could not assume jurisdiction over Audrina. She then contends that the State failed to prove the allegations contained in paragraphs (b), (d), and (e). Susanne provides no authority to support the first portion of her argument, and we note that on its face, the assertion is at odds with the relevant statutory authorities and Nebraska case law discussed above. However, we need not analyze this assertion because we find that the State proved the three contested allegations by a preponderance of the evidence.

Admissible evidence was received that DHHS had received reports regarding pre-adoption placement concerns. As for paragraph (d), although Susanne disputed some of Audrina's testimony regarding the February 26, 2023, incident, the juvenile court found that Audrina's testimony was credible. When the evidence is in conflict, an appellate court may consider and give weight to the fact that the trial court observed the witnesses and accepted one version of the facts over the other. *In re Interest of Prince R.*, 308 Neb. 415, 954 N.W.2d 294 (2021). We give weight to the fact that the juvenile court observed the witnesses and accepted Audrina's version of the facts over Susanne's version. Finally, Susanne argues that without proving the allegations contained in paragraphs (b) and (d), the State cannot prove paragraph (e). As we have found that the allegations in paragraphs (b) and (d) were proven by a preponderance of the evidence, this argument fails.

Having reviewed the evidence presented at the adjudication hearing, we conclude that the State proved the allegations of the petition by a preponderance of the evidence.

CONCLUSION

For the reasons stated above, we conclude that the juvenile court did not err in allowing Audrina to testify outside of Susanne's presence or in receiving exhibit 4 for a limited purpose. We further find no error in the juvenile court's finding that the evidence presented was sufficient to adjudicate Audrina under § 43-247(3)(a). Accordingly, the court's order is affirmed.

AFFIRMED.