Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
08/05/2022 09:08 AM CDT

In re Interest of Xandria P., a child
under 18 years of age.
State of Nebraska, appellee, v.
Dale A., appellant.

___ N.W.2d ___

Filed May 13, 2022.    No. S-21-500.

1. **Juvenile Courts: Evidence: Appeal and Error.** An appellate court reviews juvenile cases de novo on the record and reaches its conclusions independently of the juvenile court's findings; however, when the evidence is in conflict, an appellate court may consider and give weight to the fact that the trial court observed the witnesses and accepted one version of the facts over the other.

2. **Evidence: Appeal and Error.** In a de novo review, an appellate court disregards inadmissible or improper evidence.

3. **Juvenile Courts: Evidence: Appeal and Error.** While reviewing a juvenile proceeding de novo on the record, an appellate court considers whether the record establishes by a preponderance of the evidence that a juvenile is adjudicated under Neb. Rev. Stat. § 43-247(3)(a) (Reissue 2016).

4. **Rules of Evidence: Hearsay.** A declarant's out-of-court statement offered for the truth of the matter asserted is inadmissible unless it falls within a definitional exclusion or statutory exception.

5. **____: ____.** Neb. Evid. R. 803(3), Neb. Rev. Stat. § 27-803(3) (Reissue 2016), is based on the notion that a person seeking medical attention will give a truthful account of the history and current status of his or her condition in order to ensure proper treatment.

6. **Rules of Evidence: Hearsay: Sexual Assault: Minors.** Statements made by a child victim of sexual abuse to a forensic interviewer in the chain of medical care may be admissible under Neb. Evid. R. 803(3), Neb. Rev. Stat. § 27-803(3) (Reissue 2016), even though the interview has the partial purpose of assisting law enforcement's investigation of the crimes.

7. **Rules of Evidence: Hearsay.** Whether a statement was both taken and given in contemplation of medical diagnosis or treatment is a factual finding made by the court in determining the admissibility of the evidence under Neb. Evid. R. 803(3), Neb. Rev. Stat. § 27-803(3) (Reissue 2016).

8. **Juvenile Courts: Evidence: Appeal and Error.** In a juvenile case, just as in a civil case, the admission or exclusion of evidence is not reversible error unless it unfairly prejudiced a substantial right of the complaining party.

9. **Juvenile Courts: Jurisdiction: Parental Rights.** The purpose of the adjudication phase of a juvenile proceeding is to protect the interests of the child. The parents' rights are determined at the dispositional phase, not at the adjudication phase.

10. **Juvenile Courts: Jurisdiction: Proof.** At the adjudication stage, in order for a juvenile court to assume jurisdiction of minor children under Neb. Rev. Stat. § 43-247(3)(a) (Reissue 2016), the State must prove the allegations of the petition by a preponderance of the evidence.

Appeal from the County Court for Platte County: Frank J. Skorupa, Judge. Affirmed.

Joel E. Carlson, of Stratton, DeLay, Doele, Carlson, Buettner & Stover, P.C., L.L.O., for appellant.

Breanna D. Anderson-Flaherty, Deputy Platte County Attorney, for appellee.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Funke, J.

Following a trial, the county court for Platte County, Nebraska, sitting as a juvenile court, adjudicated Xandria P. as a juvenile under Neb. Rev. Stat. § 43-247(3)(a) (Reissue 2016). Xandria's mother, Victoria M., did not appeal the adjudication order, but Xandria's stepfather, Dale A., did. Because we find no merit to Dale's appeal, we affirm.

## BACKGROUND

The State of Nebraska filed a petition alleging Xandria was a juvenile under § 43-247(3)(a), because Dale, who is

married to Xandria's mother, Victoria, and lives with Xandria and Victoria, subjected Xandria to sexual abuse. The petition also alleged that Xandria had disclosed Dale's sexual contact to Victoria and that Victoria had dismissed the disclosure. The court held a hearing in May 2021 and sustained the allegations in the petition.

The trial record showed that Xandria, born in 2013, told her first grade teacher that "she had a secret with her dad" that she was not supposed to tell anyone about or he would go to jail. Xandria stated that they do things that "a boyfriend and girlfriend do." Xandria's teacher reported Xandria's statements to an investigator with the Platte County sheriff's office, Joseph Gragert. Gragert called the Nebraska Department of Health and Human Services (DHHS) child abuse hotline and completed a safety intake regarding Xandria with Sara Baustert, a DHHS child and family services specialist.

Gragert and Baustert met with Xandria at her school. Baustert testified that a school official reported that "Xandria went up to a teacher and stated that she has a secret between her and her dad and that it's something that boyfriends and girlfriends do and gestured towards her genital area." The school official stated that Xandria refers to Dale as "dad," noting that Dale lives in the home with Xandria and Victoria.

Gragert and Baustert placed Xandria into the custody of DHHS and transported her to the Northeast Nebraska Child Advocacy Center (NNCAC) in Norfolk, Nebraska. Sarah Scheinost, a forensic interview specialist, conducted a recorded forensic interview of Xandria. During the interview, Scheinost explained that the NNCAC is part of a hospital network with doctors and nurses available to meet with Xandria. Scheinost also explained that it was important for Xandria to tell the truth, and Xandria agreed to do so. Xandria then disclosed that she and her "dad" had a secret for more than 1 year whereon multiple occasions he would remove his and Xandria's clothing and "put his thing that he uses to pee" in her "place that she uses to go pee." Using her hands and

anatomical drawings, Xandria identified her vaginal area. Xandria referred to his penis as a "big, huge, thing" that he "uses to pee." Xandria reported that on multiple times he had gotten on top of her while both were without clothing. Xandria reported that "her '[d]ad' licked her in the vaginal area" and that she had disclosed this to Victoria on at least one occasion.

The State, after filing the petition in this matter, requested a pretrial hearing on the admissibility of Xandria's recorded interview. At that hearing, Scheinost provided testimony on behalf of the State to lay foundation for the admission of the recorded interview. Scheinost testified that she holds a bachelor's degree in human service counseling and a master's degree of science in education. Scheinost further testified that the NNCAC is located on the east campus of a medical facility. Scheinost indicated that the NNCAC provides forensic interviews, medical examinations, and child advocacy. Scheinost explained that forensic interviews provide medical and therapeutic care for the victim and allow for medical examination or continued therapy as possible followup treatment. Scheinost also testified that the recorded forensic interviews are conducted for medical purposes and can be used for purposes of medical diagnosis and treatment.

On cross-examination, Scheinost admitted she had no medical training and did not make a medical diagnosis. Scheinost also testified that law enforcement was involved in the matter both before and after the interview and that potential child abuse was being investigated. The court, over the hearsay objections of Dale and Victoria, ruled the interview admissible pursuant to the statutory exception regarding medical evidence under Neb. Evid. R. 803(3), Neb. Rev. Stat. § 27-803(3) (Reissue 2016).

At the adjudication hearing, Xandria did not testify, but her recorded interview was received into evidence, again over the objections of Dale and Victoria. Gragert testified about phone calls made by Dale to Victoria while Dale was in jail.

Gragert testified that Dale and Victoria spoke multiple times every day and that in certain calls, Dale had directed Victoria to tell Xandria to say that she lied, to tell her that he is in jail because of what she said, to tell her not to talk to anybody, and to tell her that she was assaulted by her biological father. In one call, Victoria stated to Dale that she may only get Xandria back for 1 day, to which Dale responded that "one day is enough to tell Xandria to keep her mouth shut." Gragert testified that Victoria generally responded to Dale in the affirmative. Gragert testified that Xandria disclosed during the forensic interview that she once told Victoria about her sexual contact with Dale, and that Victoria stated that "[d]addy wouldn't do that to you."

Victoria testified that Xandria did not disclose to her sexual contact with Dale. Victoria admitted that Dale has instructed her to tell Xandria things about the case and that Victoria generally responds to Dale in the affirmative. Victoria admitted that she had watched the forensic interview of Xandria and was aware of Xandria's statements regarding Dale's sexual contact.

The court's order of adjudication found that Xandria is a juvenile, under § 43-247(3)(a), who is abandoned by his or her parent, guardian, or custodian; who lacks proper parental care by reason of the fault or habits of his or her parent, guardian, or custodian; or whose parent, guardian, or custodian neglects or refuses to provide proper or necessary subsistence, education, or other care necessary for the health, morals, or well-being of such juvenile. The court found that the home environment created by Dale and Victoria was injurious to Xandria's health, safety, morals, and well-being.

## ASSIGNMENTS OF ERROR

Dale assigns, restated, that the court erred in (1) admitting the forensic interview into evidence over hearsay objections, (2) admitting other evidence over hearsay and relevance objections, (3) finding sufficient evidence for an adjudication, and (4) overruling Dale's motion to dismiss.

## STANDARD OF REVIEW

[1] An appellate court reviews juvenile cases de novo on the record and reaches its conclusions independently of the juvenile court's findings; however, when the evidence is in conflict, an appellate court may consider and give weight to the fact that the trial court observed the witnesses and accepted one version of the facts over the other.[1]

[2,3] Several legal principles control our de novo review of proceedings in the juvenile court. In a de novo review, an appellate court disregards inadmissible or improper evidence.[2] While reviewing a juvenile proceeding de novo on the record, an appellate court considers whether the record establishes by a preponderance of the evidence that a juvenile is adjudicated under § 43-247(3)(a).[3]

## ANALYSIS

### Evidentiary Objections

Central to Dale's appeal is his claim that the juvenile court erred in admitting hearsay and irrelevant evidence. To summarize, Dale argues that the court erred in admitting Xandria's recorded forensic interview under rule 803(3); in allowing Gragert to testify about out-of-court statements made by Xandria, Xandria's teacher, Dale, and Victoria; in admitting certified copies of Dale's criminal charges; and in admitting safety and risk assessment documents concerning Xandria.

[4] In regard to the forensic interview, a declarant's out-of-court statement offered for the truth of the matter

---

[1] See, *In re Interest of Prince R.*, 308 Neb. 415, 954 N.W.2d 294 (2021); *In re Interest of Elainna R.*, 298 Neb. 436, 904 N.W.2d 689 (2017).

[2] See, *In re Interest of D.P.Y. and J.L.Y.*, 239 Neb. 647, 477 N.W.2d 573 (1991); *In re Interest of O.L.D. and M.D.D.*, 1 Neb. App. 471, 499 N.W.2d 552 (1993), citing *In re Interest of L.H. et al.*, 241 Neb. 232, 487 N.W.2d 279 (1992).

[3] See *id.*

asserted is inadmissible unless it falls within a definitional exclusion or statutory exception.[4] Rule 803 provides:

> Subject to the provisions of section 27-403, the following are not excluded by the hearsay rule, even though the declarant is available as a witness:
>
> . . . .
>
> (3) Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment.

[5-7] Rule 803(3) is based on the notion that a person seeking medical attention will give a truthful account of the history and current status of his or her condition in order to ensure proper treatment.[5] Statements made by a child victim of sexual abuse to a forensic interviewer in the chain of medical care may be admissible under rule 803(3), even though the interview has the partial purpose of assisting law enforcement's investigation of the crimes.[6] The fundamental inquiry to determine whether statements, made by a declarant who knew law enforcement was listening, had a medical purpose is if the challenged statement has some value in diagnosis or treatment, because the patient would still have the requisite motive for providing the type of sincere and

---

[4] *State v. Jedlicka*, 297 Neb. 276, 900 N.W.2d 454 (2017).

[5] *Id*. See, *State v. Vaught*, 268 Neb. 316, 682 N.W.2d 284 (2004); *Vacanti v. Master Electronics Corp.*, 245 Neb. 586, 514 N.W.2d 319 (1994); *State v. Dyer*, 245 Neb. 385, 513 N.W.2d 316 (1994); *State v. Red Feather*, 205 Neb. 734, 289 N.W.2d 768 (1980). See, also, *Morgan v. Foretich*, 846 F.2d 941 (4th Cir. 1988); *United States v. Renville*, 779 F.2d 430 (8th Cir. 1985); *State v. Smith*, 315 N.C. 76, 337 S.E.2d 833 (1985); *Gregory v. State*, 56 S.W.3d 164 (Tex. App. 2001).

[6] *Jedlicka, supra* note 4. See, *Tilson v. Tilson*, 307 Neb. 275, 948 N.W.2d 768 (2020); *Vaught, supra* note 5; *State v. Roenfeldt*, 241 Neb. 30, 486 N.W.2d 197 (1992).

reliable information that is important to that diagnosis and treatment.[7] Whether a statement was both taken and given in contemplation of medical diagnosis or treatment is a factual finding in determining the admissibility of the evidence under rule 803(3).[8]

Statements having a dual medical and investigatory purpose are admissible under rule 803(3), only if the proponent of the statements demonstrates that (1) the declarant's purpose in making the statements was to assist in the provision of medical diagnosis or treatment and (2) the statements were of a nature reasonably pertinent to medical diagnosis or treatment by a medical professional.[9] Under rule 803(3), the admissibility of a victim's statements in a recording is not distinct from the admissibility of the statements themselves.[10] The fundamental inquiry when considering a declarant's intent is whether the statement was made in legitimate and reasonable contemplation of medical diagnosis or treatment.[11] Under rule 803(3), the appropriate state of mind of the declarant may be reasonably inferred from the circumstances; such a determination is necessarily fact specific.[12]

Dale argues there was no foundation to admit the forensic interview under rule 803(3), because the specialist who conducted the interview did not herself conduct a medical

---

[7] See *id.*

[8] See, *State v. Herrera*, 289 Neb. 575, 856 N.W.2d 310 (2014); *State v. Vigil*, 283 Neb. 129, 810 N.W.2d 687 (2012); *Red Feather, supra* note 5; *Morfeld v. Weidner*, 99 Neb. 49, 154 N.W. 860 (1915); *State v. Cheloha*, 25 Neb. App. 403, 907 N.W.2d 317 (2018); *State v. Meduna*, 18 Neb. App. 818, 794 N.W.2d 160 (2011).

[9] *Jedlicka, supra* note 4. See, *Tilson, supra* note 6; *State v. Dady*, 304 Neb. 649, 936 N.W.2d 486 (2019); *Vigil, supra* note 8; *In re Interest of B.R. et al.*, 270 Neb. 685, 708 N.W.2d 586 (2005); *Cheloha, supra* note 8.

[10] *Jedlicka, supra* note 4.

[11] *Id.*

[12] *Id.*

examination or render a medical diagnosis, nor did any other health care professional. Dale argues the sole purpose of the interview was criminal investigation.

However, Dale's argument is contrary to Nebraska law and this court's precedents. Here, Scheinost testified that the NNCAC is located on the campus of a medical facility. Scheinost testified that the recorded forensic interview was conducted for a medical purpose and could be used for purposes of diagnosis and treatment. During the forensic interview, Scheinost told Xandria that the interview room is a safe room, where she could say what she wanted to say and use the words she wanted to use without getting into trouble. Scheinost told Xandria that NNCAC is part of a hospital, that doctors and nurses work there, and that after the interview, Xandria could speak with a doctor or nurse if she had any concerns about her body or health. Upon our de no review, we conclude that the testimony of Scheinost and the recorded interview itself provide adequate foundation for admitting Xandria's recorded testimony under rule 803(3).

Given our conclusion that the juvenile court properly admitted Xandria's recorded interview, Dale's remaining evidentiary arguments as to the admission of the out-of-court statements of Xandria's teacher, Dale, and Victoria; the admission of certified copies of Dale's criminal charges; and the admission of the safety and risk assessments are irrelevant because Dale has failed to demonstrate that he was prejudiced as a result of the court's evidentiary rulings.

[8] This court has recently observed that in a juvenile case, just as in a civil case, the admission or exclusion of evidence is not reversible error unless it unfairly prejudiced a substantial right of the complaining party.[13] Moreover, when evaluating Dale's evidentiary objections, it is important to note that an appellate court does not consider inadmissible evidence

---

[13] *In re Interest of Vladimir G.*, 306 Neb. 127, 944 N.W.2d 309 (2020).

in its de novo review of a juvenile proceeding.[14] Given the lack of demonstrated prejudice and the applicable standard of review which requires the exclusion of inadmissible evidence, Dale failed to show how the juvenile court's other evidentiary rulings had any independent legal significance in the resolution of this matter. As such, Dale's assignments of error concerning the improper admission of evidence are without merit.

SUFFICIENCY OF EVIDENCE

[9,10] The purpose of the adjudication phase is to protect the interests of the child.[15] The parents' rights are determined at the dispositional phase, not at the adjudication phase.[16] At the adjudication stage, in order for a juvenile court to assume jurisdiction of minor children under § 43-247(3)(a), the State must prove the allegations of the petition by a preponderance of the evidence.[17]

Dale postulates that the forensic interview was insufficient evidence because Xandria referred to "dad" and not "Dale." Dale thus argues the interview failed to establish a positive identification. However, Dale's assertion is refuted by the record, because Xandria consistently referred to "dad" as the man living in her home who is married to her mother. As such, we conclude that the State sustained the adjudication petition by a preponderance of the evidence. This assignment of error is without merit.

---

[14] *In re Interest of D.P.Y. and J.L.Y., supra* note 2.

[15] *In re Interest of Brian B. et al.*, 268 Neb. 870, 689 N.W.2d 184 (2004).

[16] *Id.* See, also, *In re Interest of Jeremy U. et al.*, 304 Neb. 734, 936 N.W.2d 733 (2020); *In re Interest of Justine J. et al.*, 286 Neb. 250, 835 N.W.2d 674 (2013); *In re Interest of Karlie D.*, 283 Neb. 581, 811 N.W.2d 214 (2012); *In re Interest of Sabrina K.*, 262 Neb. 871, 635 N.W.2d 727 (2001); *In re Interest of Kantril P. & Chenelle P.*, 257 Neb. 450, 598 N.W.2d 729 (1999).

[17] *In re Interest of Brian B. et al., supra* note 15.

Motion to Dismiss

As a final matter, Dale argues the juvenile court lacked jurisdiction over the petition, based on his allegation that the court did not enter a temporary custody order within 48 hours from the time Xandria was taken into custody, as required by Neb. Rev. Stat. § 43-250(2) (Cum. Supp. 2020). Section 43-250(2) states in relevant part:

When a juvenile is taken into temporary custody pursuant to subdivision (2), (7), or (8) of section 43-248, and not released under subdivision (1)(a) of this section, the peace officer shall deliver the custody of such juvenile to [DHHS] which shall make a temporary placement of the juvenile in the least restrictive environment consistent with the best interests of the juvenile as determined by [DHHS]. . . . If a court order of temporary custody is not issued within forty-eight hours of taking the juvenile into custody, the temporary custody by [DHHS] shall terminate and the juvenile shall be returned to the custody of his or her parent, guardian, custodian, or relative.

Here, the record refutes Dale's argument, because a temporary custody was issued within 48 hours. On January 8, 2021, at approximately 3:30 p.m., Gragert placed Xandria into protective custody and delivered her to the custody of DHHS. On January 9, at approximately noon, a Platte County judge signed a temporary ex parte placement order and emailed it to Gragert, DHHS personnel, and a deputy Platte County attorney.

Moreover, Dale's argument is inapposite to our jurisprudence. In *In re Interest of R.G.*,[18] we held the State's failure to comply with the statutory requirements relating to the entry of an ex parte temporary detention order does not deprive the juvenile court of jurisdiction. Additionally, in *In re*

---

[18] See *In re Interest of R.G.*, 238 Neb. 405, 470 N.W.2d 780 (1991), *disapproved on other grounds, O'Connor v. Kaufman*, 255 Neb. 120, 582 N.W.2d 350 (1998).

*Interest of S.S.L.*,[19] we held that in the absence of direct statutory language to the contrary, failure to comply with the time limits imposed by § 43-250 did not mean that the juvenile court failed to acquire, or somehow lost, jurisdiction of the matter. As such, this assignment of error is without merit.

## CONCLUSION

For the reasons stated herein, we affirm.

AFFIRMED.

---

[19] See *In re Interest of S.S.L.*, 219 Neb. 911, 367 N.W.2d 710 (1985).