IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

IN RE INTEREST OF LINDA I.

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

IN RE INTEREST OF LINDA I., A CHILD UNDER 18 YEARS OF AGE.

STATE OF NEBRASKA, APPELLEE,

V.

ERIKA T., APPELLANT, AND ARGENIS B., APPELLEE.

Filed November 22, 2022.    No. A-22-260.

Appeal from the Separate Juvenile Court of Douglas County: MATTHEW R. KAHLER, Judge. Affirmed.

Joseph Kuehl, of Lefler, Kuehl & Burns Law Office, for appellant.

Donald W. Kleine, Douglas County Attorney, Rachel Lowe, and Corey Lamas, Senior Certified Law Student, for appellee.

PIRTLE, Chief Judge, and ARTERBURN and WELCH, Judges.

PIRTLE, Chief Judge.

INTRODUCTION

Erika T. appeals from the separate juvenile court of Douglas County, which adjudicated Erika's 16-year-old daughter, Linda I., to be within the meaning of Neb. Rev. Stat. § 43-247(3)(a) (Reissue 2016), on the grounds that Linda lacked proper parental care by reason of the fault or habits of Erika. Erika challenges the sufficiency of the evidence in support of the State's petition. For the reasons that follow, we affirm.

BACKGROUND

Immediately prior to the events of this case, Linda resided with her mother, Erika. Linda was a junior in high school and was, by all accounts, a bright student. Linda was apparently

- 1 -

enrolled at least part time in a private college preparatory academy in addition to her regular school attendance. Linda also worked at McDonald's as a cashier. However, Linda testified that her life started "falling apart out of nowhere" around September 2021. Linda started skipping school, and she explained that "I was having really strong suicidal thoughts, and I would sit in the parking lot of the school just trying to convince myself not to kill myself."

While Linda testified that these symptoms began in September 2021, she recalled having similar feelings "a couple of months after seventh grade," when she was depressed and cut herself every day for a week. Linda testified that she was living with her grandmother at the time, and her grandmother eventually noticed the cuts. At some point, Erika was informed of the circumstances and discussed Linda's symptoms with her grandmother. Linda testified that either her grandmother or her maternal aunt, Nancy T., signed a permission slip for her to speak with a school psychologist, but it is unclear what if any additional steps were taken to address Linda's mental health at the time. Linda moved in with Erika a short time after that incident, where she remained for approximately 3 years until the events of this case. In addition to the suicidal thoughts beginning in September 2021, Linda testified to a prior suicide attempt in which she "overdosed" on "THC pills" in either January 2020 or January 2021. In describing that incident, Linda testified that Erika was present and simply did nothing even after Linda "passed out" on the floor in front of her. Erika denied any knowledge of such an incident.

According to Linda, she continued to struggle with suicidal thoughts on a daily basis from September to November 2021. By late November 2021, Linda had been continuously absent from school for a "few weeks" or "a month." Erika testified that she was not made aware of Linda's absences until "around November 22." Erika confronted Linda about her absences, and, as punishment, Linda lost her phone and driving privileges. At some point on November 22, Linda ran away from Erika's house, and Erika reported Linda missing shortly thereafter.

It was not clear from the record whether or to what extent Erika was aware of Linda's mental health symptoms at that point. Linda testified that she told Erika she "wanted to go to therapy" on one occasion "between September and November" 2021. The Child and Family Services Specialist (CFSS) assigned to this family, Brooke Corey, indicated that as of December 20, 2021, Erika had been aware of Linda's mental health needs for "almost two months" or since mid-October. The State indicated that, as of December 15, 2021, Erika had been aware of Linda's symptoms for "three months" or since mid-September. In contrast, the testimony of both Erika and Nancy suggests that Erika was not aware of Linda's ongoing mental health symptoms until after Linda ran away. In any case, Linda's mental health needs were abundantly apparent to all parties after Linda ran away and disclosed them to law enforcement.

After running away on November 22, 2021, Linda remained missing until around nighttime on November 23, at which point Linda arrived at Nancy's house. Erika had already gone to Nancy's in search of Linda and was present when Linda pulled into the driveway. When Linda refused to get out of the vehicle, Erika attempted to forcibly remove Linda, allegedly pulling Linda by her hair. An altercation ensued between Erika and another maternal aunt, Michelle T., and Erika called the police.

Law enforcement officers responded to Nancy's house and Linda testified that she informed the officers that she did not feel safe returning to Erika's custody, and she explained that "when I was at Erika's house, I was having these really, really strong urges to kill myself." It

appears that the officers initially determined to return Linda to Erika's custody, and Erika determined that Linda was to be transported to Immanuel Hospital for mental health treatment in light of her claims to suicidal ideation. However, Linda ran away again prior to being transported to Immanuel.

Linda returned to Nancy's sometime the next day, November 24, 2021. Erika was not present, as she was apparently at work at the time. Nancy reported Linda's return to law enforcement. Prior to the arrival of law enforcement, Linda disclosed to Nancy that her mental health symptoms were at least partially caused by "flashbacks of what she calls a rape event" that occurred when she was younger. At the adjudication hearing, Linda was asked about anything that may have led to her having thoughts of suicide and self-harm, and she testified that one night, "I don't remember when it was, . . . I started getting memories of when [Erika's] old boyfriend, Alister—he would molest me a lot when I was a little kid." Erika later reported that she was also sexually assaulted by Alister in the past, and it appears that Alister was deported to Mexico in 2015.

Responding officer, Jamie Madson, testified that she responded to Nancy's house on November 24, 2021, and received reports of "child abuse" arising out of Erika's attempt to forcibly remove Linda from a vehicle the night before. Madson further noted Linda's allegation of prior sexual assault and her expressed intention to attempt suicide if returned to Erika's custody. Madson attempted to reach Erika by phone but was only able to leave a voicemail. Erika returned Madson's call later that day, and she denied any allegations of child abuse but refused to meet with Madson in person. As of November 24, Linda was removed from Erika's custody on an emergency basis and placed with Nancy. Linda continued to live with Nancy for "a tad under 30 days," at which point Linda was apparently placed with Michelle until the adjudication hearing. Linda was formally removed from Erika's custody on January 10, 2022, when the juvenile court granted the State's ex parte motion for immediate custody filed along with the juvenile petition on December 30, 2021.

CFSS Corey testified that she began her investigation into this matter on November 30, 2021, when she met with Erika at Erika's residence to discuss the need for a safety plan. Corey testified that a safety plan is appropriate whenever there is an identified safety issue. In this case, Corey identified the safety issue as "Linda was not receiving mental health treatment." Corey testified that, despite numerous attempts, the proposed safety plan was never implemented because Erika "wouldn't agree to specifics" regarding Linda's mental health treatment.

The record reflects that the central disagreement between Erika and Corey pertained to the appropriateness of Immanuel Hospital for treatment of Linda's mental health needs. Throughout this case, Erika expressed a desire to have Linda taken to Immanuel Hospital for mental health treatment. However, Corey maintained that, in her experience, Immanuel would not lead to long-term mental health treatment unless the patient was "currently suicidal" at the time of admission. Corey testified that Linda needed long-term treatment and that Linda did not express feeling "actively suicidal" so long as she was placed outside Erika's home. Accordingly, Corey maintained that Immanuel was not an appropriate treatment option under the circumstances of this case. Corey testified that she repeatedly explained this to Erika, but Erika continued to insist on Immanuel.

Corey further indicated that, rather than focusing on Linda's apparent mental health needs, Erika fixated on investigating the veracity of Linda's sexual assault allegation. In that regard, Linda reportedly underwent a "forensic interview" at Project Harmony on December 8, 2021, but there was no evidence from that interview in the record. On December 15, Erika attempted to arrange for a "rape kit" examination. Linda testified that she did not learn of the examination until she was in the examination room, and she recalled having an "anxiety attack" as a result. In contrast, Erika testified that Linda initially wanted to undergo the examination but changed her mind once she got into the examination room. In any case, Linda became distraught and the examination was not conducted. Corey testified that the December 15 doctor's appointment caused her concern because it seemed that Erika did not believe Linda's sexual assault allegation and became focused on obtaining "medical documentation" to either prove or disprove the allegation.

Meanwhile, Corey indicated that Linda repeatedly expressed a desire to participate in therapy. Corey recalled a meeting with both Erika and Linda on December 20, 2021, where Linda was "crying and asking, 'When can I get into therapy?' And Erika never said anything." Erika's coworker, Nancy Hellman, testified that she accompanied Erika to Project Harmony on December 15, for the purpose of getting Linda a therapy appointment, however, it does not appear that an appointment was arranged at that time. Linda eventually began participating in weekly therapy at Project Harmony on February 3, 2022, although it was not clear how or when that was arranged.

The State filed a juvenile petition on December 30, 2021, alleging that Linda lacks proper parental care by reason of Erika's fault or habits. In support thereof, the State alleged the following six factual bases labeled A through F (count 1-A through count 1-F):

A. [Linda] struggles with her mental health.

B. [Erika] has failed to seek medical care and/or services for said juvenile's mental health issues.

C. [Erika] has subjected [Linda] to inappropriate physical contact and/or discipline.

D. [Erika] has failed to provide proper parental care, support, supervision, and/or safety to [Linda].

E. [Erika] has failed to follow through with voluntary services designed to prevent the removal of [Linda].

F. Due to the above allegations, [Linda] is at risk for harm.

An adjudication hearing was held on March 21, 2022. As outlined above, the bulk of the testimony pertained to actions either taken or not taken with regard to Linda's mental health needs from November 22, 2021, to December 30, 2021. The juvenile court entered an adjudication order on March 25, 2022. The court explicitly found the testimony of Linda, Corey, and Madson to be credible. The court noted Linda's "repeated requests for therapeutic help, as well as attempts by [the Department of Health and Human Services (DHHS)] to implement voluntary services to benefit the family." The court found that Erika "failed to take appropriate steps to get [Linda] involved in therapy, and also failed to engage with voluntary services despite being given ample time to participate in services." The court found counts 1-A, 1-C, 1-D, 1-E, and 1-F to be true by a preponderance of the evidence and dismissed count 1-B for insufficient evidence. Thus, the court adjudicated Linda to be without proper parental care by reason of the fault or habits of Erika and

- 4 -

ordered Linda to remain in temporary DHHS custody for placement to exclude Erika's home. Erika appealed.

## ASSIGNMENT OF ERROR

Erika assigns that the juvenile court erred in finding counts 1-C, 1-D, 1-E, and 1-F true by a preponderance of the evidence.

## STANDARD OF REVIEW

An appellate court reviews juvenile cases de novo on the record and reaches its conclusions independently of the juvenile court's findings; however, when the evidence is in conflict, an appellate court may consider and give weight to the fact that the trial court observed the witnesses and accepted one version of the facts over the other. *In re Interest of Xandria P.*, 311 Neb. 591, 973 N.W.2d 692 (2022).

## ANALYSIS

There is no dispute on appeal that count 1-A, which alleged that Linda "struggles with her mental health," was true by a preponderance of the evidence. Moreover, the juvenile court dismissed count 1-B, which alleged that Erika "failed to seek medical care and/or services for [Linda's] mental health issues," for insufficient evidence. This leaves counts 1-C, 1-D, 1-E, and 1-F, and the court's findings with respect to those four allegations correspond to Erika's four assignments of error on appeal. As mentioned above, the court made explicit credibility findings in favor of Linda, Corey, and Madson. Because the issues on appeal generally revolve around factual disputes and alleged conflicts in the evidence, we consider and give weight to the fact that the juvenile court observed the witnesses and accepted one version of the facts over the other.

Erika's first assignment of error challenges the sufficiency of the evidence in support of count 1-C, which alleged that Erika "subjected [Linda] to inappropriate physical contact and/or discipline." This allegation pertained to Erika's attempt to forcibly remove Linda from a vehicle, allegedly pulling Linda by her hair. Erika does not dispute that she attempted to forcibly remove Linda from the vehicle. However, Erika maintains that she grabbed Linda's jacket and denies pulling Linda by her hair.

Whether or not Erika grabbed Linda's hair, there was no dispute that Erika subjected Linda to physical contact, and multiple witnesses described the incident as an act of "child abuse" to law enforcement. The juvenile court noted that all of the witnesses, including Erika, testified to some sort of physical altercation, first between Erika and Linda, and then between Erika and Michelle. Thus, the court found that the incident was established by a preponderance of the evidence. We likewise conclude that the State carried its burden to prove the allegation in count 1-C by a preponderance of the evidence.

Erika's second assignment of error challenges the sufficiency of the evidence in support of count 1-D, which alleged that Erika "failed to provide proper parental care, support, supervision, and/or safety" for Linda. Erika points out that the juvenile court "did not make any specific findings on this particular Count, and the language of this Count leaves it open to almost any possibility of neglect." Brief for appellant at 10. Thus, Erika focuses her argument on the court's factual finding that Erika failed to take appropriate steps to find therapy. Erika argues the record

"is filled with testimony from witnesses who say that [Erika] attempted to get help for [Linda]." *Id*. Specifically, Erika points to her efforts to have Linda taken to Immanuel Hospital and her attempt to arrange for therapy at Project Harmony on December 15, 2021.

The State, on the other hand, points to the "numerous occasions" in which Erika "denied knowing of" Linda's mental health needs and failed to seek therapeutic services. Brief for appellee at 20. According to the State, Erika simply "mitigated" and "ignored" Linda's mental health symptoms. *Id*. at 21. Altogether, the State argues that count 1-D was amply supported by the evidence of Erika's "utter lack of support for [Linda's] well-being and repeated failure to seek any medical intervention or therapeutic services." *Id*. at 22. We agree.

Linda's mental health needs were apparent for well over 2 months before she finally obtained therapy in February 2022. As early as November 30, 2021, and repeatedly thereafter, Corey explained to Erika that Immanuel Hospital was not an appropriate treatment option and that Erika needed to arrange for "long-term therapy." However, Erika did not arrange for therapy and continued to insist that Linda be taken to Immanuel. Moreover, instead of prioritizing Linda's apparent need and desire for therapy, Erika focused her attention on investigating Linda's sexual assault allegation, further aggravating Linda's mental health symptoms. Altogether, we conclude the State carried its burden to prove the allegation in count 1-D by a preponderance of the evidence.

Erika's third assignment of error challenges the sufficiency of the evidence in support of count 1-E, which alleged that Erika "failed to follow through with voluntary services designed to prevent [Linda's] removal." The State points to Corey's "countless efforts" to implement the safety plan and Erika's apparent lack of cooperation in that regard. Brief for appellee at 22. Erika admits that she failed to sign the safety plan, but she argues there was no evidence regarding the actual contents of the safety plan. Erika posits that, if the safety plan was intended to ensure Linda obtained mental health treatment, then "the record is clear" that Erika "made those attempts." Brief for appellant at 11.

Whatever the specific contents of the proposed safety plan, the record reflects that Erika failed to meaningfully engage with Corey with regard to any of the actions deemed necessary to ensure Linda's safety and well-being. We acknowledge a certain lack of rapport between Erika and Corey, but Erika had a responsibility to set that aside and cooperate with Corey in furtherance of Linda's best interests. Accordingly, we conclude that the State carried its burden to prove the allegation in count 1-E by a preponderance of the evidence.

Finally, Erika's fourth assignment of error challenges the sufficiency of the evidence in support of count 1-F, which alleged that "Due to the above allegations, [Linda] is at risk for harm." Erika acknowledges that there was "some evidence" of the "hair pulling incident" alleged in count 1-C, however, Erika argues that "there is little to no evidence that [Erika] failed to avail herself of voluntary services, and there is ample evidence that [Erika] attempted to get [Linda] mental health help on multiple occasions." Brief for appellant at 11. Thus, Erika concludes, the State failed to show that Linda was at risk of harm if returned to Erika's custody. The State, on the other hand, summarizes the evidence above and concludes that "[Erika's] conduct shows that despite [Linda's] suicidal thoughts, self-harm, and actual suicide attempts, she is simply unwilling to put the needs of her child above hers and seek the medical assistance [Linda] not only needs now, but will continue to need in the future." Brief for appellee at 26.

As the State points out, Nebraska case law is clear that at a minimum, the State must establish that without intervention, there is a definite risk of future harm. See *In re Interest of Kane L.*, 299 Neb. 834, 910 N.W.2d 789 (2018). There was no dispute that Linda struggles with her mental health. Furthermore, Linda reported persistent suicidal ideation while in Erika's custody and she expressed an intention to attempt suicide if returned to Erika's custody. This evidence alone amounts to proof by a preponderance of the evidence of a definite risk of future harm to Linda if returned to Erika's custody. Especially when we account for the evidence that Erika has thus far been unable to provide Linda with the support and services that she needs to address her mental health, we conclude that the State carried its burden to prove the allegation in count 1-F by a preponderance of the evidence.

## CONCLUSION

For the foregoing reasons, we affirm the order of the juvenile court in all respects.

AFFIRMED.