IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

IN RE INTEREST OF TE'JON W.

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

IN RE INTEREST OF TE'JON W., A CHILD UNDER 18 YEARS OF AGE.

STATE OF NEBRASKA, APPELLEE,

V.

RANDI J., APPELLANT, AND JOHN W., APPELLEE.

Filed September 24, 2024.    No. A-24-077.

Appeal from the Separate Juvenile Court of Douglas County: MATTHEW R. KAHLER, Judge. Affirmed.

Nicholas G. Faletti, of Johnson & Pekny, L.L.C., for appellant.

Christopher McMahon, Deputy Douglas County Attorney, for appellee.

PIRTLE, Chief Judge, and ARTERBURN and WELCH, Judges.

PIRTLE, Chief Judge.

## INTRODUCTION

Randi J. appeals the adjudication of her child, Te'Jon, in the separate juvenile court of Douglas County. She challenges the juvenile court admitting into evidence her no contest plea to the charge of caretaker neglect and the sufficiency of evidence to adjudicate Te'Jon. Based on the reasons that follow, we affirm.

## BACKGROUND

On July 17, 2023, the State filed a petition alleging that Te'Jon, born in 2006, was within the meaning of Neb. Rev. Stat. § 43-247(3)(a) (Reissue 2016). The petition alleged that Te'Jon lacked proper parental care by reason of the fault or habits of his mother Randi in that: on July 14, 2023, Randi requested police to remove Te'Jon from her home and stated that she would no longer

- 1 -

care for him under any circumstances; Randi's use of alcohol and/or controlled substances placed Te'Jon at risk for harm; Randi failed to provide Te'Jon with proper parental care, support, supervision, and/or protection; Randi failed to provide Te'Jon with safe, stable, and/or appropriate housing; and due to the above allegations, Te'Jon was at risk for harm. The State filed an ex parte motion for immediate custody of Te'Jon the same day, which the court granted, and Te'Jon was removed from the home and placed in foster care.

An adjudication hearing was held in November and December 2023. Te'Jon was 17 years old at the time of the hearing. Te'Jon testified that on July 14, 2023, he and Randi got into an argument about Te'Jon cleaning his room. Randi had told Te'Jon to clean his room and when he refused, she started cleaning it. Te'Jon did not want her in his room so he told Randi he would clean it, which then led to him and Randi screaming at each other. Te'Jon testified that Randi screamed such statements as "I hate you. You're the reason why my life is like it is now. Die." He testified that Randi had made similar statements in text messages to him in the past when he went to live with his brother, such as "Die, die, die" and "I hate you."

Te'Jon also testified that there were threats back and forth between him and his mother during the incident. He explained that when Randi made a threat such as "I'll kill you" he responded, "If you do, I will fight." No physical altercation took place, but Te'Jon testified that Randi chased him around the house. Te'Jon also testified that during their argument on July 14, 2023, Randi said she wanted him out of the house.

During the July 14, 2023, argument, Randi and Te'Jon both called the police. Te'Jon testified that when the police were talking to Randi, he heard her tell the police she wanted Te'Jon out of the house. Te'Jon also heard Randi say, "I want him gone. I'm done taking care of him."

Te'Jon testified that the July 2023 argument was not the first time he and Randi had an argument that involved Randi screaming, and it was not the first time she said she wanted him out of the house. He testified that Randi screaming at him started when he was 13 years old and that it occurred more than once a month and possibly more than once a week. He stated that screaming followed by "a bunch of rambling and going on and on" sometimes lasted 2 to 3 hours.

Te'Jon admitted that he sometimes threatened Randi during their arguments, such as telling her he was going to attack her. He stated that he has never actually physically attacked her. He had also made threats to get other family members involved. He explained that members of his father's side of the family had physically attacked his mother in the past.

Te'Jon testified that prior to his removal, he observed Randi smoke marijuana about once a day. He explained that he knew the difference between a regular cigarette and a marijuana cigarette because he had experience with marijuana himself. He described marijuana as being green in color and stated that what he saw his mom smoking did not come out of a cigarette-type package. He testified he heard Randi on the phone buying marijuana and she would either pick it up or it would be brought to the house. Te'Jon testified that when Randi did not have anything to smoke, she would behave aggressively.

Te'Jon also testified that he observed a clear plastic bag containing a white powder in the home on July 14, 2023. He also saw a small mirror with a white powdery substance on it on the top of the dresser in Randi's bedroom. Te'Jon believed the white substance was cocaine. Te'Jon testified that he told the police on July 14, that there was marijuana and cocaine in the house. Te'Jon showed the mirror to the police and was told there was not enough of the substance on the

mirror to test. He also testified that after he was removed from Randi's care, he went to the house to retrieve some items and he saw what he believed was cocaine with a dollar bill rolled up by the substance.

Te'Jon testified that over the past couple years, he had left Randi's house in Omaha on several occasions and went to stay with his older brother who lived in Lincoln. He would go to his brother's house following an argument with Randi and stay with him for months at a time. Te'Jon testified that he was around 15 years old the first time he stayed with his brother. Te'Jon would not attend school when he stayed at his brother's house, and Randi was aware he was missing school. Randi called Te'Jon at times telling him he needed to return home and attend school.

Te'Jon also testified that on one occasion when he was staying at his brother's house, he left there and went to live with his father in Arkansas. He stayed there 4 or 5 months before returning to Randi's house.

Te'Jon testified that at the time of the July 2023 incident, he had been back at Randi's house for about a month after returning from his brother's house.

Omaha Police Officer Timothy Smock testified that he was the officer who responded to a call at Randi's home on July 14, 2023. Te'Jon was outside when he arrived. Randi was standing in the doorway of the house and would not let Te'Jon into the house. When Smock spoke with Randi, she said she could not control Te'Jon and she did not want to let him back inside the house. Smock testified that Te'Jon seemed under control and was not exhibiting any behavioral issues at the time. Smock told Randi that if she was not going to let Te'Jon back into the house she could either allow him to take Te'Jon to the hospital or he could take Te'Jon to a relative's house for the night. Smock testified that Randi never told him she was unable to drive so she could not take Te'Jon to the hospital, but he offered to transport Te'Jon and Randi to the hospital.

Smock testified that Randi refused both options and refused to let Te'Jon back into the house. He explained that Randi's sister came to the house, but she was not willing to have Te'Jon stay with her. Randi told Smock she was not going to take care of Te'Jon under any circumstances. Smock asked Randi why she did not want Te'Jon in the home and she stated she did not want to deal with him anymore, that he refused to do chores, and she wanted him placed outside the home. Smock determined Te'Jon needed to be placed in foster care.

Smock testified that Randi was charged with caretaker neglect. The State offered an exhibit into evidence which contained a certified copy of the complaint against Randi in Douglas County Court for caretaker neglect, as well as the court's journal entry and order showing that Randi pled no contest and was found guilty. The exhibit was received into evidence over Randi's objection.

Randi testified as to her version of events on July 14, 2023. She testified that at the time, three of her five sons were living with her and she told them she was going to take a nap and they needed to clean the house. When she woke up, Te'Jon was downstairs in his bedroom and it had not been cleaned. Randi told him to start cleaning the room and he refused so she told him she was going to clean it. Te'Jon did not want her to clean his room and told her to get out of his space. An argument ensued and Te'Jon said he was going to call his aunts and uncles to come over and "jump her." She testified that he made that threat because he had witnessed his father's relatives physically attack her before. Randi testified that Te'Jon was being difficult and that she did not want to deal with his behavior so she called the police. She testified that she called the police to de-escalate the situation and to ensure that she and Te'Jon would both be safe.

Randi testified that when the police arrived, she and Te'Jon both went outside. Randi told Smock that she could not control Te'Jon, as he had left her home and then came back multiple times. She testified that in the year before the July 2023 incident, Te'Jon had only lived with her for about a month. Prior to the July 2023 incident, he had only been back home for about 3 weeks.

Randi testified that she had reported Te'Jon running away twice and had called the police several times in the past due to Te'Jon's behavior. She testified that when she called the police in the past, they would either have Te'Jon take a walk or go somewhere else and that is what she expected to happen on July 14. Instead, Smock told her to take him to the hospital. Randi testified she told Smock she could not take him to the hospital herself because she was not legally able to drive and she had two other children in the house. She did not recall Smock offering to transport Te'Jon to the hospital. Randi testified that she also told Smock that her sister was on the way over and if she would give her and Te'Jon a ride to the hospital, they would go. Smock then asked her if she was going to take Te'Jon to the hospital and when she said, "No," he arrested her.

Randi testified that a lot of the arguments between her and Te'Jon were about his school attendance, work, and chores. She testified that he was enrolled in school in the spring of 2023 semester but did not attend. He was also enrolled in school in Arkansas for a short time during the months he lived with his father. Te'Jon told her that some days he went to school and some days he did not.

Randi did not know Te'Jon left his brother's house to go to his father's house until Te'Jon called her when he was already on a bus heading for Arkansas. After a few months, Te'Jon called Randi asking her to come get him and take him back to Nebraska, which she did. When he returned to Nebraska, he stayed with his brother.

On cross-examination, Randi denied telling Smock that she did not want Te'Jon in her home. Rather, she testified she told him she was having a hard time dealing with his behavior. She would have allowed him back in the home that day had she not been arrested.

Following the hearing, the juvenile court entered an order stating that it found the testimony of Te'Jon and Smock to be credible. It found the counts in the petition were true by a preponderance of the evidence and that Te'Jon was a child within the meaning of § 43-247(3)(a) insofar as Randi was concerned.

## ASSIGNMENTS OF ERROR

Randi assigns that the juvenile court erred in (1) admitting her no contest plea to caretaker neglect into evidence, and (2) finding the allegations in the petition to be true by a preponderance of the evidence.

## STANDARD OF REVIEW

An appellate court reviews juvenile cases de novo on the record and reaches its conclusions independently of the findings made by the juvenile court below. *In re Interest of Mateo L. et al.*, 309 Neb. 565, 961 N.W.2d 516 (2021). However, when the evidence is in conflict, an appellate court may consider and give weight to the fact that the juvenile court observed the witnesses and accepted one version of the facts over the other. *Id.*

- 4 -

ANALYSIS

*No Contest Plea.*

Randi first assigns that the juvenile court erred in admitting her no contest plea to caretaker neglect into evidence. The court received into evidence the State's exhibit containing a certified copy of the complaint against Randi for caretaker neglect, as well as the court's journal entry and order showing that Randi pled no contest and was found guilty. Randi objected, arguing that the exhibit was inadmissible under Neb. Rev. Stat. § 27-410 (Reissue 2016) because it was evidence of a no contest plea.

Section § 27-410 provides:

Evidence of . . . a plea of nolo contendere . . . is not admissible in any civil or criminal action, case, or proceeding against the person who made the plea or offer. This rule shall not apply to the introduction of voluntary and reliable statements made in court on the record in connection with any of the foregoing pleas or offers when offered for impeachment purposes or in a subsequent prosecution of the declarant for perjury or false statement.

Randi argues that none of the exceptions set forth in § 27-410 are applicable in this case making the exhibit inadmissible.

At the start of the second day of the adjudication hearing, the State brought the question of the admissibility of the exhibit before the court. The court stated that because the exhibit was certified, it was self-authenticating pursuant to Neb. Rev. Stat. § 27-902(4) (Reissue 2016) and could be received into evidence and it would apply the appropriate weight. When the State later offered the exhibit into evidence, the juvenile court received it over Randi's objection and stated:

I'll note that it is a certified document and what I am considering is that this is evidence that is congruent with the testimony of [Smock] regarding the fact the mother was cited at the time of the contact with law enforcement regarding this incident.

As far as the resolution, there is a -- it looks like on the fourth page of this exhibit, it has a journal entry from the County Court of Douglas County involving the resolution of this. It has a sentence and resolution.

As far as the plea of a no contest plea, I will not consider -- I will just consider the fact that this is a notation of a charge for the mother regarding this incident with police but that's the extent of what the Court is considering here and I'll receive Exhibit 4 for that purpose.

The juvenile court determined that the exhibit was admissible pursuant to § 27-902(4), which provides that properly certified public records are self-authenticating. *VKGS v. Planet Bingo*, 309 Neb. 950, 959, 962 N.W.2d 909, 918 (2021). However, the court stated that it could not consider the no contest plea and could only consider that a citation was issued against Randi at the time of the contact with law enforcement on July 14, 2023. It again stated it would only consider the notation of the charge and that was the extent of what it was considering and it received the exhibit for that purpose. Therefore, the juvenile court gave no weight to Randi's no contest plea when considering the allegations in the petition.

In a juvenile case, just as in a civil case, the admission or exclusion of evidence is not reversible error unless it unfairly prejudiced a substantial right of the complaining party. *In re Interest of Xandria P.*, 311 Neb. 591, 973 N.W.2d 692 (2022). Therefore, even if the exhibit, specifically the journal entry and order showing that Randi pled no contest, should not have been admitted into evidence based on § 27-410, Randi has failed to show how the juvenile court's evidentiary ruling prejudiced a substantial right. Given the lack of demonstrated prejudice, the admission of her no contest plea does not constitute reversible error. As such, Randi's assignment of error concerning the improper admission of her no contest plea fails.

*Adjudication.*

Randi next assigns that the juvenile court erred in finding the allegations in the petition were true by a preponderance of the evidence and therefore, that Te'Jon came within the meaning of § 43-247(3)(a).

The purpose of the adjudication phase is to protect the interests of the child. *In re Interest of Xandria P., supra.* At the adjudication stage, in order for a juvenile court to assume jurisdiction of minor children under § 43-247(3)(a), the State must prove the allegations of the petition by a preponderance of the evidence. *In re Interest of Xandria P., supra.* When establishing that a child comes within the meaning of § 43-247(3)(a), it is not necessary for the State to prove that the child has actually suffered physical harm, only that there is a definite risk of future harm. *In re Interest of Taeven Z.*, 19 Neb. App. 831, 812 N.W.2d 313 (2012).

Randi first argues that the State failed to prove that on July 14, 2023, she asked police to remove Te'Jon from the family home and stated that she would no longer care for him. She relies on her testimony wherein she denied making these statements to Smock. She also argues that the statements made by Te'Jon, a "17-year-old minor," and Smock, an "unscrupulous police officer," were not credible and that we should disregard their testimony in our de novo review. Brief for appellant at 18.

In contrast to Randi's testimony, Te'Jon and Smock both testified that they both heard Randi say she wanted Te'Jon out of her house and she was done taking care of him. Specifically, Te'Jon testified that Randi told Smock she wanted Te'Jon out of the house. Te'Jon also heard Randi say, "I want him gone. I'm done taking care of him." Smock testified that Randi told him she did not want to let Te'Jon back inside the house and he observed Randi standing in the doorway of the house to prevent him from coming in. Smock also testified that Randi refused the options he presented of either taking Te'Jon to the hospital or taking him to a relative's home. Smock asked Randi why she did not want Te'Jon in the home and she stated she did not want to deal with him anymore, he refused to do chores, and she wanted him placed outside the home. She also stated she was not going to take care of Te'Jon under any circumstances.

The juvenile court heard the entirety of Te'Jon and Smock's testimony and found the testimony of both to be credible. The juvenile court, as the trier of fact, was entitled to weigh the credibility of the witnesses. *In re Interest of Draygon W.*, 31 Neb. App. 400, 980 N.W.2d 648 (2022). When the evidence is in conflict, an appellate court may consider and give weight to the fact that the juvenile court observed the witnesses and accepted one version of the facts over the other. *In re Interest of Mateo L. et al.*, 309 Neb. 565, 961 N.W.2d 516 (2021). Here, we give weight to the fact that the juvenile court, after hearing Te'Jon and Smock's testimony, found them to be

credible and accepted their version of the facts from July 14, 2023, over Randi's version. Therefore, we conclude the State proved by a preponderance of the evidence that Randi asked Smock to remove Te'Jon from her home and stated that she would no longer care for him.

Randi next argues that there was insufficient evidence to support the juvenile court's finding that her use of alcohol and/or controlled substances put Te'Jon at risk of harm. We disagree. Te'Jon testified that prior to his removal, he observed Randi smoke marijuana about once a day. He explained that he knew the difference between a regular cigarette and a marijuana cigarette because he had experience with marijuana himself. He described marijuana as being green in color and stated that what he saw his mom smoking did not come out of a cigarette-type package. Te'Jon also testified he observed Randi buying marijuana by making a phone call and then she would either pick it up or it would be delivered to the house.

Te'Jon also testified that he observed a clear plastic bag containing a white powder in the home on July 14, 2023, as well as a small mirror with a white powdery substance on it. Te'Jon believed the white substance was cocaine. He also testified that after he was removed from Randi's care, he went to the house to retrieve some items and saw what he believed was cocaine with a dollar bill rolled up by the substance.

Randi contends that the only evidence the State offered regarding her drug use "was testimony from a seventeen-year-old juvenile with a habit of running away from this mother." Brief for appellant at 22. Again, Randi is challenging the credibility of Te'Jon's testimony. We give weight to the fact that the juvenile court, after hearing Te'Jon's testimony, found him to be credible and accepted his version of the facts. See *In re Interest of Mateo L. et al., supra*. We therefore conclude the State proved by a preponderance of the evidence its allegation that Randi's use of alcohol and/or controlled substances placed Te'Jon at risk for harm.

Randi next challenges the court's finding that the State proved she failed to provide Te'Jon with proper parental care, support, supervision, and/or protection. Nebraska courts have long held that "proper parental care" includes providing a home, support, subsistence, education, and other care necessary for the health, morals, and well-being of the child. *In re Interest of Jeremy U. et al.*, 304 Neb. 734, 936 N.W.2d 733 (2020).

We have already discussed the statements Randi made on July 14, 2023, indicating that she no longer wanted to care for and provide a home for Te'Jon. There was also evidence that during the argument between Te'Jon and Randi on July 14, Randi screamed such statements as, "I hate you. You're the reason why my life is like it is now. Die." Te'Jon also testified that Randi had made similar statements in text messages to him in the past when he went to live with his brother, such as, "Die, die, die" and "I hate you." There was evidence of regularly occurring arguments between Randi and Te'Jon involving screaming and threats. These arguments had been occurring since Te'Jon was 13 years old and would sometimes last for 2 to 3 hours.

There was also evidence that Te'Jon had missed a lot of school in the past couple years. Randi admits that there is evidence to support a finding that Te'Jon lacks proper parental care based solely on truancy. Brief for appellant at 25. However, she further argues that Te'Jon's absenteeism is not due to any fault on her part because Te'Jon missed school during the times he went to live with his brother.

We conclude the State proved by a preponderance of the evidence that Randi failed to provide proper parental care, support, supervision, and/or protection for Te'Jon.

Finally, Randi argues that there was insufficient evidence to prove she failed to provide Te'Jon with safe, stable, and/or appropriate housing. She contends that despite Te'Jon leaving her home on multiple occasions, she maintained stable housing for when he returned, and that any instability in housing stems from Te'Jon's decisions to leave home.

Much of the same evidence that supports a finding that Randi failed to provide proper parental care, support, supervision, and/or protection for Te'Jon, supports a finding that Randi failed to provide Te'Jon with safe, stable, and/or appropriate housing. As previously discussed, there was evidence that Randi wanted Te'Jon removed from her home and refused to care for him, thereby denying him housing.

There was also evidence of circumstances in the home that created unsafe housing or unsafe environment. These included the frequent arguments between Randi and Te'Jon that had been occurring since Te'Jon was 13 years old. The arguments involved screaming and threats. Further, there was evidence of the presence of drugs in the home. We conclude there was sufficient evidence to find Randi failed to provide Te'Jon with safe, stable, and/or appropriate housing.

Upon our de novo review, we conclude the State proved the allegations of the petition by a preponderance of the evidence. Accordingly, the juvenile court did not err in finding Te'Jon was within the meaning of § 43-247(3)(a).

## CONCLUSION

We conclude the juvenile court did not err in adjudicating Te'Jon. The order of the juvenile court is affirmed.

AFFIRMED.